527 A.2d 973

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles PIERCE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 5, 1986.

Decided June 9, 1987.

John W. Packel, Chief, Appeals Division, Jules Epstein, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Unit, Marianne Cox, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

In this appeal, once again we are required to consider the standard for analyzing ineffectiveness of counsel claims and are specifically asked to compare our previously announced standard of *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), with the United States Supreme Court standard set forth in its recent decision of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Charles Pierce, Appellant, was convicted by a jury and sentenced to serve a term of imprisonment of not less than four nor more than ten years for aggravated assault. On appeal to Superior Court, Appellant challenged his trial counsel's actions in introducing Appellant's prior incarceration into testimony and in failing to object to the trial court's charge defining circumstantial evidence. Characterizing both actions as ineffective assistance of counsel, Ap-

pellant argued that he was denied a fair trial by his trial counsel's actions and, therefore, is entitled to a new trial. A panel of the Superior Court agreed with Appellant's allegation and, by its opinion of October 14, 1983, reversed the judgment of sentence imposed on Appellant and remanded the matter for a new trial.

The Commonwealth thereupon sought, and was granted, its petition to reargue this matter before an *en banc* panel of the Superior Court which, by its opinion and order of September 6, 1985, vacated the panel opinion and affirmed the judgment of sentence. *Commonwealth v. Pierce*, 345 Pa.Superior Ct. 324, 498 A.2d 423 (1985). In a comprehensive opinion, Superior Court analyzed Appellant's ineffectiveness claims and rejected them using our *Maroney* standard and adopted as part of that analysis a prejudice standard as found in *Strickland.*

We granted Appellant's Petition for Allowance of Appeal to consider how our *Maroney* standard and the *Strickland* standard compare, and whether Superior Court's analysis comports with our notions of how ineffective assistance of counsel allegations should be analyzed.

Appellant argues that Superior Court's analysis of his ineffectiveness claim is at variance with *Maroney* and *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978). He argues these cases forbid consideration of a harmless error or prejudice test as part of determining whether counsel's actions had a reasonable basis or after a finding that counsel's actions were ineffective.

According to Appellant's reading of *Maroney* and *Badger*, a determination of ineffectiveness is prejudicial per se, and the defendant is not required to demonstrate that the ineffectiveness resulted in actual prejudice to his case. Appellant further argues that Superior Court's linkage of *Strickland* into *Maroney* in order to deny his claim of ineffectiveness constitutes reversible error. In short, he alleges that *Strickland's* prejudice requirement is not presently part of the jurisprudence of this Commonwealth and, indeed, should not be infused into our law. For the follow-

ing reasons, we reject Appellant's arguments and affirm the Order of Superior Court.

*Strickland* was the result of numerous legal efforts to deal with competing arguments regarding the effect of counsel's incompetency. Two views have emerged on this subject.[1] On the one hand, some argue that ineffectiveness is per se a violation of the Sixth Amendment and is, automatically, a prejudice to the defendant's case. This prophylactic guideline often is labelled as a "categorical approach."[2] A contrasting view insists that ineffectiveness must be linked specifically to a reasonable demonstration that it had an adverse effect on the outcome of the case: the impairment must have been sufficiently serious to have had an effect on the reliability of the outcome of the proceeding.

*Strickland's* major thrust is directed at establishing the rule that ineffective assistance mandates relief only where it has been established by the defendant that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Often referred to as the "judgmental approach,"[3] the commanding intent of *Strickland* is to burden the defendant with the task of proving actual prejudice. Eschewing "mechanical rules" for a "totality of circumstances test," *Strickland* requires that:

> Convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defend-

---

1. The evolution of this analysis can be traced through the famous vacillations of the District of Columbia Circuit Court of Appeals in the decisions of *United States v. Decoster: Decoster I* at 487 F.2d 1197 (D.C.Cir.1973), and *Decoster III* at 624 F.2d 196 (D.C.Cir.1976).

2. This terminology was used by Judge Leventhal in his highly influential plurality opinion in *Decoster III.*

3. This phrase also belongs to the *Decoster* opinions.

ant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced that defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. *Strickland,* therefore, directs the review of the appellate court at the reliability of the verdict rather than at the quality of counsel's performance. It emphatically rejects the argument that an exclusive categorical approach is required by the Sixth Amendment.

Our standard governing ineffectiveness claims was set forth in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967), which requires that we independently review the record and examine counsel's stewardship in light of the available alternatives. As we stressed in *Maroney:*

Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

*Id.,* 427 Pa. at 604, 235 A.2d at 352–353.

Our cases clearly indicate that ineffectiveness claims are measured by two components. First, counsel's performance is evaluated in light of its reasonableness if it is determined that the underlying claim is of arguable merit. *Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714 (1984); *Commonwealth v. Wade,* 501 Pa. 331, 461 A.2d 613 (1983); *Commonwealth v. Hubbard,* 472 Pa. 259, 372

A.2d 687 (1977). We also presume that counsel is acting effectively. *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981).

■ Second, we have required that the defendant demonstrate how the ineffectiveness prejudiced him. *Commonwealth v. Clemmons*, 505 Pa. 356, 497 A.2d 955 (1984); *Commonwealth v. Vogel*, 501 Pa. 314, 461 A.2d 604 (1983) *cert. denied* 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984); *Commonwealth v. Johnson*, 490 Pa. 312, 416 A.2d 485 (1980); *Commonwealth v. Weathers El*, 485 Pa. 28, 400 A.2d 1295 (1979); *Maroney, supra.* These same principles were also recently reaffirmed in *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986); *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764 (1986); *Commonwealth v. Christy*, 511 Pa. 490, 515 A.2d 832 (1986); and *Commonwealth v. Bennett*, 512 Pa. 525, 517 A.2d 1248 (1986).

Appellant, however, reads *Maroney* to mean that once a court determines that no reasonable basis exists for counsel's performance, that he has been prejudiced *a fortiori.* In *Maroney* we noted:

Cases such as *Commonwealth ex rel. Gallagher v. Rundle*, 423 Pa. 356, 223 A.2d 736 (1966), and *Commonwealth ex rel. Jones v. Maroney*, 417 Pa. 567, 209 A.2d 285 (1965), indicate that, for relief to be granted, appellant must demonstrate that counsel's ineffectiveness worked to his prejudice. Appellant, however, advances the proposition that any requirement of prejudice is inconsistent with *White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050 [10 L.Ed.2d 193] (1963), and *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157 [7 L.Ed.2d 114] (1961). Since our test requires that we examine the approach employed by trial counsel in light of the available alternatives, a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized. Obviously, then, if there is no reasonable basis to support trial counsel's decisions (a finding prerequisite

to a conclusion of ineffectiveness), his decisions a fortiori were prejudicial to the client.

*Maroney* 427 Pa. at 605 n. 8, 235 A.2d at 353 n. 8.

In determining whether counsel's performance had any reasonable basis, Appellant points to *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978), where we cautioned a reviewing court that:

In examining the alternatives a court may not utilize a harmless error analysis, and the alternatives must be examined only as a means of determining whether the course chosen had some reasonable basis.

*Id.*, 482 Pa. at 244, 393 A.2d at 644.

■ Appellant's reading of this portion of *Maroney* and *Badger* equates prejudice as the unreasonableness of counsel's performance. Appellant argues that these cases provide that if counsel had no reasonable basis for acting in the manner he did, he prejudiced his client because counsel compromised his client's constitutional right to effective representation and, therefore, the client is entitled to a new trial. While Appellant's reading appears to be correct, the difficulty with Appellant's reading of *Maroney* and *Badger* is that we have continuously restated that a defendant who claims that his counsel's performance was ineffective or had no reasonable basis has not brought the ineffectiveness inquiry to an end. He must additionally demonstrate that he was prejudiced by the ineffectiveness. *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986); *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764 (1986); *Commonwealth v. Christy*, 511 Pa. 490, 515 A.2d 832 (1986); and *Commonwealth v. Bennett*, 512 Pa. 525, 517 A.2d 1248 (1986); *Commonwealth v. Clemmons*, 505 Pa. 356, 49 A.2d 955 (1984); *Commonwealth v. Wade*, 501 Pa. 331, 461 A.2d 613 (1983); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

In light of our application of a performance *and* prejudice review to ineffectiveness claims, we find the language relied on by Appellant in *Maroney* and *Badger* to be inconsistent with the law as we have actually applied it. Accord-

ingly, to the extent that *Maroney* or *Badger* have been interpreted to exclude prejudice from analysis of ineffectiveness claims, that language is expressly overruled.

■ The obvious identical textual and policy considerations in *Maroney* and *Strickland* logically lead us to hold that together they constitute the same rule. Our decisions in *Maroney* and its progeny, therefore, do not create greater or lesser protection under Article I, Section 9, of the Pennsylvania Constitution, than the present federal standard. For these reasons, we insist that our cases require that a defendant must show that the omission or commission by counsel was arguably ineffective *and* the likelihood that he was prejudiced as a result thereby. *Commonwealth v. Clemmons,* 505 Pa. 356, 497 A.2d 955 (1984); *Commonwealth v. Wade,* 501 Pa. 331, 461 A.2d 613 (1983).

In this conclusion, we hold that there are independent and adequate state grounds under Article I, Section 9, of the Pennsylvania Constitution by which defendants are afforded adequate protection. Under the present analysis, therefore, we see no reason to address the academic question of whether *Maroney* is being brought into line with *Strickland* or vice-versa. The fact of the matter is that the identical textual and policy considerations logically lead us to hold that together they constitute an identical rule of law in this Commonwealth.[4]

---

4. *Strickland* has been applied to several subsequent Sixth Amendment cases. *Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d (1986); *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

In *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the United States Supreme Court addressed the question of whether a state court can analyze an ineffectiveness claim without looking for prejudice. At issue in *Van Arsdall,* was the allegation that the trial court had violated the defendant's right of confrontation by restricting defense counsel's cross-examination. The Supreme Court of Delaware concluded that the trial court's ruling was contrary to the mandate of the confrontation clause of the Sixth Amendment, but refused to consider whether that error had an adverse effect on the outcome of the proceeding. The United States Supreme Court concluded that the state court "was wrong when it declined to consider whether that ruling was harmless in the context of the trial as a

■ Applying our principles judging ineffectiveness (which correspond to those of *Strickland*), it becomes apparent that on this record Appellant cannot demonstrate that counsel's conduct had an adverse effect on the outcome of the proceedings. Appellant claims that trial counsel committed error when he brought before the jury the fact that he had a criminal record. Based on our review of this record, however, we cannot see how this knowledge by the jury could have reasonably had an adverse effect on the outcome or how keeping this fact from the jury "would have offered a potential for success substantially greater than the tactics used." *Commonwealth v. Clemmons, supra.*

The evidence produced at trial revealed that on September 21, 1980, Appellant entered the hospital room of his former common law wife, Carmen Myers, who was recovering from a hysterectomy, and stabbed her in the chest. Immediately after Appellant stabbed the victim, she called out for a nurse and stated that she had been stabbed. Saundra Dawson, a clerk who was working in the hall where the assault occurred, observed Appellant walk past her desk while she telephoned security. Appellant passed within an arm's length of her, and she positively and unwaveringly identified Appellant at trial. Appellant then fled to the roof where he was apprehended by security personnel in hot pursuit. He matched the description provided by the desk clerk. After being apprehended, Appellant stated, "You got me...." He was then given his *Miranda* warnings and taken to the police station where he admitted, "I was up on the roof waiting to see Carmen [the victim] and guards came up and arrested me." Appellant was forthwith transported to the victim's bedside where she identified him as her attacker. Appellant presented next to no defense, as was his constitutional right.

whole" and remanded to the state court so that it could review the record for prejudice. *Van Arsdall* may be an indication that the United States Supreme Court will expect, in the future, that state tribunals conduct ineffectiveness analyses via a performance and prejudice standard which, as already has been shown, is our standard.

Upon cross-examination of Mrs. Myers, Appellant's trial counsel elicited the following testimony:

Q. Mrs. Myers, how long did Fred Myers live in your home with you and your husband?

A. I don't recall.

Q. Approximately?

A. About four months. Three months.

Q. During that three or four months, during a portion of that time the defendant was incarcerated, is that correct?

A. Yes. (N.T. at 44–45).

Even if such an admission were erroneous, we cannot see how it affected the outcome of the trial. The *uncontradicted*, properly admitted evidence of Appellant's guilt was overwhelming, and we can find no reasonable probability that had the admission not been made, the result would have been different. Since the prejudice question is resolvable, we need not even consider whether counsel's decision to introduce Appellant's prior incarceration had a reasonable basis, and the ineffectiveness claim can be dismissed.

Since Appellant's trial was not fundamentally unfair, we reject his claim of ineffectiveness. The Order of Superior Court is affirmed.[5]

HUTCHINSON, J., joins the Majority and files a concurring opinion.

NIX, C.J., files a concurring opinion.

FLAHERTY, J., concurs in the result.

ZAPPALA, J., files a dissenting opinion.

**5.** Appellant also challenged the effectiveness of his counsel's assistance because he failed to object to the court's charge defining circumstantial evidence. We note that, while Appellant has not raised this issue before us, Superior Court correctly rejected the claim, finding that the allegation had no arguable merit.

NIX, Chief Justice, concurring.

I agree with the majority that this jurisdiction should adhere to its formulation of ineffectiveness as set forth in *Commonwealth ex rel. Washington v. Maroney* ("Washington"), 427 Pa. 599, 235 A.2d 349 (1967). I also agree that the *Washington* standard as originally formulated clearly required an independent finding of prejudice. Using the *Washington* standard, properly applied, it is clear that appellant did not establish ineffectiveness of counsel in this matter. Thus I join in the mandate of the majority. I cannot however join the opinion because I do not believe that *Washington* and *Strickland v. Washington* ("Strickland"), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), are premised upon "identical textual and policy considerations", maj.op. pg. 161, nor do I agree with the assertion that *Washington* does "not create greater ... protection under Article I, Section 9, of the Pennsylvania Constitution, than the present federal standard." Maj.op. pg. 161. I am also in disagreement with the implication in the majority opinion that *Washington* permits a finding of ineffectiveness and that such a finding can be rendered harmless by the absence of a showing of prejudice. The *Washington* rationale requires a finding of prejudice resulting from counsel's alleged dereliction before it can be deemed to be constitutionally deficient.[1]

In *Washington* the Court was assessing the *trial strategy* employed by counsel. It first established the test as being whether the "course chosen by counsel had some *reasonable basis* designed to effectuate his client's interest." 427 Pa. at 604, 235 A.2d at 352 (emphasis in original). The *Washington* court further directed that the test was "*not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record." *Id.* (em-

---

1. The discussion in the concurring opinion of Mr. Justice Hutchinson and the dissenting opinion of Mr. Justice Zappala relating to the question of the applicability of harmless error to a finding of ineffective assistance of counsel is misplaced. Properly defined, ineffective assistance of counsel requires a finding of prejudice that would necessarily negate the proposition that the error was harmless.

phasis in original.) Rather, that Court instructed that effective assistance is to be found if trial counsel's decision had any reasonable basis. It pointed out that "a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized." *Id.*, 427 Pa. at 605 n. 8, 235 A.2d at 353 n. 8. In that context the Court proceeded to dispose of the question as to whether there must be an independent demonstration of prejudice by stating:

> Obviously, then, if there is no reasonable basis to support trial counsel's decisions (a finding prerequisite to a conclusion of ineffectiveness), his decisions a fortiori were prejudicial to the client.

*Id.*, 427 Pa. at 605 n. 8, 235 A.2d at 353 n. 8.

The above language was intended merely to indicate that, where the underlying strategy of the defense was found wanting under the reasonable basis test, such an error would so infect the entire course of the trial that the prejudice to the defendant would be obvious. The majority is correct in concluding that this language did not warrant a conclusion that prejudice would be presumed. The *Washington* Court reasoned that in the case before it the existence of prejudice was evident and further demonstration of its presence was unnecessary. The *Washington* opinion properly read clearly mandates that prejudice must be an essential ingredient of a finding of ineffectiveness. Therefore, I cannot accept the majority's suggestion that there can be a finding of ineffectiveness of counsel without a finding of prejudice. I also reject the suggestion that the absence of prejudice merely renders the ineffectiveness of counsel harmless.

This disagreement is more than mere semantics because it reaches the very heart of the term "ineffective assistance of counsel." The right to assistance of competent counsel at trial as recognized at this time, in this Commonwealth, is a critical element of the panoply of rights encompassed in the concept of a fair trial. Article I, section 9, of our

Constitution has been interpreted to require that an accused is entitled to competent counsel at trial. *Commonwealth v. Wideman*, 453 Pa. 119, 306 A.2d 894 (1973); *Commonwealth ex rel. Simon v. Maroney*, 405 Pa. 562, 176 A.2d 94 (1961), *cert. denied*, 376 U.S. 966, 84 S.Ct. 1126, 11 L.Ed.2d 984 (1964). This is based upon a recognition of the myriad duties that trial counsel must fulfill on behalf of the client to assure a fair trial to the accused. American Bar Association, Standards for Criminal Justice (hereinafter ABA Standards), Standard 4-1.1, Commentary, "The Role of the Defense Counsel" (1982). Counsel must assure procedural fairness, ABA Standards, *supra*, Standard 4-3.6(a), keep the accused fully informed of all of his options throughout the proceedings, ABA Standards, *supra*, Standard 4-3.1(a); 4-3.1(b); 4-3.8; 4-6.2(a), and assure that the client's cause is presented in the most favorable light. ABA Standards, Standard 4-1.1, Commentary, *supra*. For this reason it is obvious that the right to counsel must necessarily require the right to the assistance of effective counsel.[2] *See McMann v. Richardson*, 397 U.S. 759, 773 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970); *Reece v. Georgia*, 350 U.S. 85, 90, 76 S.Ct. 167, 170, 100 L.Ed. 77 (1955); *Glasser v. United States*, 315 U.S. 60, 69-70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942); *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940); *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1932); *see generally* Bazelon, "The Defective Assistance of Counsel", 42 U.Cin.L.Rev. 1 (1973); Waltz, "Inadequacy of Trial Representation as a Ground for Post-Conviction Relief in Criminal Cases", 59 N.W.U.L.Rev. 289 (1964).

2. Judge Bazelon noted that "[t]he Sixth Amendment [right to counsel] demands more than placing a warm body with a law degree next to the defendant.... A defendant is no less harmed when counsel is present but fails to perform the duties owed to his client than when counsel is absent altogether," *United States v. DeCoster*, 199 U.S.App. D.C. 359, 453 n. 129, 624 F.2d 196, 290 n. 129 (D.C.Cir.) (en banc) (Bazelon, J., dissenting, joined by J. Skelly Wright, C.J.) *cert. denied*, 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311 (1979). Although Judge Bazelon was referring to the Federal right to counsel, his observation is equally applicable to the constitutional right to counsel provided in this Commonwealth.

Ineffective assistance by definition should relate to the responsibilities imposed upon counsel in undertaking the stewardship in the matter. The finding of ineffectiveness must reflect that counsel has been derelict in the performance of one of the duties undertaken in the role of counsel, *i.e.*, that counsel has failed to assure procedural fairness or to keep the accused fully informed of all of his options throughout the proceedings or to present the cause of his client in the most favorable light. In assessing counsel's responsibility in each of these instances, the reasonable basis test of *Washington* is to be applied. Under this test, counsel's assistance is to be found lacking only if one of these responsibilities was not met. In such a case, prejudice would be evident. This eliminates the scrutiny of an isolated judgment which did not impact upon the basic responsibilities of counsel in the discharge of his office.

Under the *Washington* type of situation, where the stewardship of the conduct of the trial has been found wanting, the prejudice is clearly present and a finding that the constitutional mandate requiring effective counsel has not been met. However, where the reasonable basis test is being applied to an isolated judgment made by counsel during the course of trial, its impact upon the overall quality of representation is not necessarily as clear as in the *Washington* type situation. In this instance, it can only be demonstrated that the constitutional mandate requiring effective counsel has been ignored when it is clearly established that the dereliction was such as to reduce the overall quality of representation below the acceptable level. That occurs when one of the obligations of counsel to the client has not been met (*i.e.*, where the dereliction of counsel has caused the defendant to have been deprived of procedural fairness, failed to properly inform the accused of the important options throughout the proceedings, or failed to present the position of the client at trial in the most favorable light available). It is the resultant prejudice to the defendant that establishes that the defendant did not

receive the benefit of effective representation and justifies the finding of ineffective counsel which is constitutionally offensive.[3]

This formulation is clearly different from that established in *Strickland*. The *Strickland* test focused upon the reliability of the judgment. It has been charged that the *Strickland* majority construed the federal constitutional guarantee of effective assistance of counsel to reducing the chance of an innocent person being convicted of crime. *Strickland v. Washington, supra*, 466 U.S. at 711, 104 S.Ct. at 2077 (Marshall, J., dissenting). Such a view would be incompatible with the concept of the right to effective counsel in this Commonwealth which guarantees anyone charged with crime a fair trial, which necessarily includes the right to competent counsel.

Moreover, I do not subscribe to the view that permits an assessment of the strength of the Commonwealth's case, after the fact, as a valid indicator of the reliability of a verdict of guilt. It may well be that counsel's ineffectiveness substantially contributed to the apparent invincibility of the Commonwealth's proof. As noted by this Court in *Commonwealth v. Edwards*, 394 Pa. 335, 338, 147 A.2d 313, 315 (1959):

> Even, if in a hypothetical case, the evidence of guilt piles as high as Mt. Everest on Matterhorn, even if the District Attorney conscientiously believes the defendant to be as guilty as Cain, and no matter with what certainty the Judge views the culpability of the accused at the bar, the defendant is still entitled to all the safeguards of a fair trial as announced in the Constitution and the law of the land.

Unfortunately, there have been decisions which purportedly applied the *Washington* standard that presumed preju-

**3.** In this context it must be emphasized that the *Washington* standard does not mandate the highest quality of advocacy but rather insists upon the minimal level of competency. *See Commonwealth ex rel. Washington v. Maroney, supra.*

dice where it was not evident from the record.[4] *Commonwealth v. Bolden*, 512 Pa. 468, 517 A.2d 935 (1986) (Nix, C.J. and McDermott, J. dissenting); *Commonwealth v. Bricker*, 506 Pa. 571, 487 A.2d 346 (1985). It was cases such as these that caused this writer to seriously consider the wisdom of abandoning *Washington* as a standard. However, in view of today's reaffirmance that prejudice is indeed a critical element for such a finding,[5] I can again enthusiastically embrace *Washington* as the appropriate test for a determination of ineffectiveness of counsel under our constitutional provision.

HUTCHINSON, Justice, concurring.

I join the majority opinion but write separately to respond to Mr. Justice Zappala's query as to how our test for ineffectiveness "compares" with the harmless error test we set forth in *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). Dissenting op. at 175 n. 1. The answer is that such a comparison is not necessary.

In *Story*, this Court applied the harmless beyond a reasonable doubt standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), to errors involving state law, specifically to errors by the trial judge in admission of evidence. The burden of proving the harmless nature of such errors rests with the Commonwealth. *Story*, 476 Pa. at 406 n. 11, 383 A.2d at 162 n. 11. Neither *Story* nor *Chapman* bear on the instant matter, claimed ineffectiveness of counsel. They relate to errors by the court, and the court's conduct of the trial is judged on specific deviations from law. This case involves errors by counsel, which are judged under a general standard of due diligence. The failure to perceive the difference in treatment required by this distinction is what heretofore posed

---

4. These were decisions where the claimed error of counsel did not in fact deprive the defendant of the guaranteed assistance of counsel and, therefore, the grants of new trials were clearly unwarranted.

5. My only regret is that the majority did not explicitly make the finding of prejudice an element of the determination of ineffectiveness.

much of our difficulty in dealing with ineffectiveness. Indeed, the tendency of courts to focus on individual errors by counsel in applying *Commonwealth ex rel Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), noted by the dissent, is, in my judgment, a result of the failure to make this distinction.

Confusion in this area arises because our test for ineffectiveness contains a "performance" component. Majority op. at 6. To the extent a deficient performance is equated with ineffective assistance, further inquiry might appear to require a harmless error analysis. This equation, however, is incorrect. It ignores the reason we have recognized a right to counsel under the Sixth Amendment and thus mischaracterizes that right.

The Sixth Amendment right to counsel exists in order to protect the fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684–85, 104 S.Ct. 2052, 2062–63, 80 L.Ed.2d 674 (1984). As noted in *Strickland*, the United States Constitution guarantees a fair trial through its Due Process Clause, but defines the elements of a fair trial through the Sixth Amendment. *Id.*

Our test for ineffectiveness acknowledges the purpose of an accused's right to counsel. We require a defendant to show his counsel's performance was deficient and that this deficiency prejudiced his defense. Unless a defendant proves both, we cannot say his counsel was ineffective in failing to provide "the assistance necessary to justify reliance on the outcome of the proceeding." *Id.* at 692, 104 S.Ct. at 2067.

*Strickland* properly recognizes the nature of the right to counsel and thus places the burden of proving ineffectiveness upon the defendant seeking relief. It is not, nor does it embody, a harmless error analysis.

ZAPPALA, Justice, dissenting.

A popular and indeed cogent axiom states "if it ain't broke don't fix it". Furthermore, there is a far more important and cherished principle that has been the founda-

tion of criminal jurisprudence in this nation which simply provides that a person is presumed innocent and his guilt must be proven by his accusor. With these two tenets in mind, I must respectfully dissent from the majority's holding here today.

The majority once again seizes upon public clamor to walk in lockstep with our federal brethren. We have once again abandoned our coveted position of being a leader among this nation's judiciary and relegate ourselves to a position of "follower of federalism". In moving along this path, the majority of this Court has disregarded this Commonwealth's reputation for both fairness and excellence.

I am convinced that the standard this Court set in 1967 in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967) is a fair and appropriate standard upon which to measure claims of ineffectiveness of counsel and should be retained in this Commonwealth independent of the United States Supreme Court's addition of an "actual prejudice" component to that standard. I realize, however, that the majority of this Court is of the opinion that the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) is the proper standard under which to judge ineffectiveness. I respect the majority's prerogative to so decide. My difficulty here is with the impercipience of the majority in its denial of the fact that *Washington* and *Strickland* are two distinct standards which cannot coexist. The majority, rather than acknowledging the obvious distinction between *Washington* and *Strickland*, stating the desire of the Court to adopt the "actual prejudice" component, and specifically overruling *Washington*, instead chooses to argue away both the clear intent of the *Washington* Court and the obvious distinctions. In so doing, the Court weakens and confuses the law in this area. At the same time, the reasoning reaffirms my belief that *Strickland* should be rejected.

The weakness in the path chosen by the majority in adopting the *Strickland* standard is clear. The entire theo-

ry is predicated upon a selective reading of *Washington* and a denial of the obvious.

We began to interpret *Washington* as paralleling *Strickland* in *Commonwealth v. Buehl,* 510 Pa. 363, 508 A.2d 1167 (1986). We did so, however, by taking out of context a portion of a footnote in *Washington,* 427 Pa. at 605 n. 8, 235 A.2d at 353 n. 8. When read as it is quoted in *Buehl,* 510 Pa. at 376, 508 A.2d at 1174, the note appears to state that relief will only be granted if Appellant can demonstrate that counsel's ineffectiveness worked to his prejudice. A reading of the full footnote however, reveals just the opposite.

> Cases such as *Commonwealth ex rel. Gallagher v. Rundle,* 423 Pa. 356, 223 A.2d 736 (1966), and *Commonwealth ex rel. Jones v. Maroney,* 417 Pa. 567, 209 A.2d 285 (1965), indicate that, for relief to be granted, appellant must demonstrate that counsel's ineffectiveness worked to his prejudice. Appellant, however, advances the proposition that any requirement of prejudice is inconsistent with *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050 [10 L.Ed.2d 193] (1963), and *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157 [7 L.Ed.2d 114] (1961). Since our test requires that we examine the approach employed by trial counsel in light of the available alternatives, a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized. Obviously, then, if there is no reasonable basis to support trial counsel's decisions (a finding prerequisite to a conclusion of ineffectiveness), his decisions a fortiori were prejudicial to the client.

*Washington,* 427 Pa. at 605 n. 8, 235 A.2d at 353 n. 8. We again quoted the same abbreviated portion of the footnote in *Commonwealth v. Albrecht,* 510 Pa. 603, 625, 511 A.2d 764, 775 (1986), and likewise in *Commonwealth v. Christy,* 511 Pa. 490, 496, 515 A.2d 832, 835 (1986) and *Commonwealth v. Bennett,* 512 Pa. 525, 531, 517 A.2d 1248, 1251 (1986).

In the instant case the majority finally confronts both the entire footnote (Slip Opinion at 7, 8) and our holding in *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978). *Badger* held that in determining ineffectiveness the court may *not* utilize a harmless error analysis. Faced with this conflict, the majority acknowledges that the Appellant's reading of *Washington* and *Badger* (that prejudice is implicit in the unreasonableness of counsel's actions and a harmless error standard is not to be utilized), appears to be a correct interpretation, yet attempts to counter that interpretation by stating that this Court has *applied Washington* and *Badger* in a manner which requires that the defendant show prejudice. Cited as authority are *Buehl*, *Albrecht*, *Christy*, and *Bennett*, the cases wherein only a portion of footnote 8 had been reproduced. I cannot subscribe to the theory or practice of creating new law by "incestuous citation"—that is, by quoting phrases in case law taken out of context, and citing them in a sufficient number of cases. As Mr. Justice Musmanno so aptly put it:

Our system of jurisprudence is based on precedent. To allow a glaring omission in a judge's charge to go uncorrected would mean that in future trials where the evidence to convict would not be so overwhelming as the District Attorney and the lower Court believe it to be in this case, a similar omission could not be complained of because this case would be cited as a precedent. It will be recalled that when Bassanio asked that the law be modeled to suit his pressing needs, Portia answered:

'It must not be; there is no power in Venice
Can alter a decree established:
"Twill be recorded for a precedent,
And many an error, by the same example,
Will rush into the state: it cannot be." ' [footnote omitted] [Merchant of Venice, Act IV, sc. 1.]

Not to order a new trial in the case at hand would be to set our approval on an error and by that example, error could be cited as authority, and a misleading signboard would rise on the highway of truth.

*Commonwealth v. Edwards*, 394 Pa. 335, 338–39, 147 A.2d 313, 315 (1959).

The majority's error is compounded by citing to earlier cases for support of its position that the defendant bears the burden of demonstrating he was prejudiced by counsel's ineffectiveness. The majority points to cases such as *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984); *Commonwealth v. Wade*, 501 Pa. 331, 461 A.2d 613 (1983); *Commonwealth v. Vogel*, 501 Pa. 314, 461 A.2d 604 (1983) *cert. denied* 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984); *Commonwealth v. Johnson*, 490 Pa. 312, 416 A.2d 485 (1980); *Commonwealth v. Weathers El*, 485 Pa. 28, 400 A.2d 1295 (1979); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), as mandating that the defendant demonstrate how the ineffectiveness prejudiced him. A close reading of each of these cases, however, reveals that while the word "prejudice" is used in the context of "ineffectiveness", not one of them can be read to support the contention that this Commonwealth requires a defendant to meet the *Strickland* burden of establishing how the ineffectiveness of his counsel (as found by a court under Step 1 of the majority's test) prejudiced him. In every one of the cases cited by the majority, the claims of ineffectiveness were dismissed at the *first* inquiry—whether counsel was ineffective. The claims of the defendants in each of these cases were grounded on failure to raise what was judicially determined to be either a baseless or non-meritorious claim in the *first* instance. We have *always* declined to find counsel ineffective for failing to raise such a claim. *Commonwealth v. Silo*, 509 Pa. 406, 502 A.2d 173 (1985); *Commonwealth v. Stoyko*, 504 Pa. 455, 475 A.2d 714 (1984) cert. denied sub nom. *Stoyko v. Pennsylvania*, 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297; *Commonwealth v. Manigault*, 501 Pa. 506, 462 A.2d 239 (1983). The majority errs, however, where it attempts to interpret the Step 1 finding as being identical to the greater Step 2 burden under *Strickland* which requires an additional showing of prejudice *following* a finding of ineffectiveness under Step 1. In each case cited by the majority, the Step 2 burden was

never reached due to the failure to find ineffectiveness at the *initial* inquiry. It is clear, therefore, that the prejudice standard referred to by the majority as being identical to the federal test cannot be supported by citation to these cases. Indeed, under the majority's theory, if, in any of the above cases, a defendant *could* have shown a claim of arguable merit, the ineffectiveness claim would still have been susceptible to dismissal under a "harmless error" theory (Step 2) if there had otherwise been found overwhelming evidence of that defendant's guilt; that is, if the defendant could not show prejudice, the acknowledged error could be overlooked as harmless. I can find no support for such a theory in any case decided by this Court.

My position, therefore, is that *Washington* and *Strickland* represent two separate and distinct tests for analyzing claims of ineffectiveness of counsel. *Strickland* places the burden upon the defendant to show that the ineffectiveness of his trial counsel prejudiced his case.[1] *Washington* on the other hand does not place the burden of showing prejudice on either party, but rather concludes that the ineffectiveness of trial counsel is *inherently* prejudicial. This Court in *Badger* specifically rejected the notion that this error could be harmless. We said:

> [The Superior Court in *Badger*] reasoned that the Commonwealth's evidence was so strong that it would be a futile gesture for Badger's counsel to ask for trial before another judge. Such an assessment of the
>
> > '... strength of the prosecution's evidence against the defendant is, of course, one step in applying a harmless

---

1. It would have indeed been helpful to my understanding of the majority's holding today had it set forth its analysis of how that test compares with the harmless error test this Court announced in *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). In *Story*, we placed the burden of showing harmless error with respect to all other trial errors upon the Commonwealth, *Id.*, 476 Pa. at 406, n. 11, 383 A.2d at 162 n. 11, setting the burden of proof at the greatest possible degree, "beyond a reasonable doubt". In other words an error is to be considered harmful, and the basis for granting relief, unless the Commonwealth can establish otherwise. To my knowledge, this Court has never overruled nor modified that test by shifting the burden to the defendant to prove the negative.

error standard.  See *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).'

Cf. *Commonwealth·v. Story,* 476 Pa. 391, 383 A.2d 155, 165–66 (1978).  Essentially, a harmless error standard seeks to determine whether the error had a prejudicial effect.  *Commonwealth v. Story,* 476 Pa. at 412–413, 383 A.2d at 166.  See *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973); *Schneble v. Florida,* supra.  Such an analysis in determining whether counsel is effective cannot be used because

> 'assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." ' *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) quoting from *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

*Badger,* 482 Pa. at 243–44, 393 A.2d at 644.  Indeed, even Justice Pomeroy, who would have required a showing of prejudice, acknowledged that *Washington* did not require one.  He stated:

> Time and again this Court, in its application of the *Washington* test, see *Id.,* 427 Pa. at 604, 235 A.2d 349, has properly made an independent review of the record to determine whether there was 'a reasonable basis' for counsel's action or non-action (citation omitted).  But in so doing we have assumed, I think mistakenly, **that no inquiry is necessary as to whether or not ineffectiveness, if found, resulted in prejudice.**

*Id.,* 482 Pa. at 249, 393 A.2d at 647 (Pomeroy, J. dissenting) (emphasis added).  It is therefore clear that the *Washington* Court announced a new rule of law which introduced a test for ineffectiveness of counsel and that test neither allowed consideration of ineffective representation as a harmless error nor required the defendant to show prejudice following a finding of ineffectiveness.  That we may have misapplied the rule at various times does not change

that rule unless this Court specifically overrules that precedent. The Court has not done so here nor in any of the other cases cited by the majority in support.

While the Court is certainly free to overrule *Washington* and establish a new test for ineffectiveness in this Commonwealth, I am of the belief that the *Washington* test as it was originally intended is the only fair and workable standard under which to determine ineffectiveness. The *Strickland* standard unfairly burdens the defendant with a showing that not only was counsel ineffective but that his ineffectiveness "substantially" contributed to his conviction. This effectively allows his fundamental right to the effective assistance of counsel to be denied on the basis of an appellate court's determination that there was overwhelming evidence of his guilt, and his claim therefore dismissed as harmless error. The unfairness of this standard was articulated best by Mr. Justice Marshall in his dissent in *Strickland:*

> I object to the prejudice standard adopted by the Court for two independent reasons. First, it is often very difficult to tell whether a defendant convicted after a trial in which he was ineffectively represented would have fared better if his lawyer had been competent. Seemingly impregnable cases can sometimes be dismantled by good defense counsel. On the basis of a cold record, it may be impossible for a reviewing court confidently to ascertain how the government's evidence and arguments would have stood up against rebuttal and cross-examination by a shrewd, well prepared lawyer. The difficulties of estimating prejudice after the fact are exacerbated by the possibility that evidence of injury to the defendant may be missing from the record precisely because of the incompetence of defense counsel. (footnote omitted) In view of all these impediments to a fair evaluation of the probability that the outcome of a trial was affected by ineffectiveness of counsel, it seems to me senseless to impose on a defendant whose lawyer has been shown to have been incompetent the burden of demonstrating prejudice.

Second and more fundamentally, the assumption on which the Court's holding rests is that the only purpose of the constitutional guarantee of effective assistance of counsel is to reduce the chance that innocent persons will be convicted. In my view, the guarantee also functions to ensure that convictions are obtained only through fundamentally fair procedures. (footnote omitted) The majority contends that the Sixth Amendment is not violated when a manifestly guilty defendant is convicted after a trial in which he was represented by a manifestly ineffective attorney. I cannot agree. Every defendant is entitled to a trial in which his interests are vigorously and conscientiously advocated by an able lawyer. A proceeding in which the defendant does not receive meaningful assistance in meeting the forces of the state does not, in my opinion, constitute due process.

In *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967), we acknowledged that certain constitutional rights are 'so basic to a fair trial that their infraction *can never be treated as harmless error.*' Among these rights is the right to the assistance of counsel at trial. *Id.,* at 23, n. 8, 87 S.Ct., at 827, n. 8; see *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). (footnote omitted) In my view, the right to *effective* assistance of counsel is entailed by the right to counsel, and abridgment of the former is equivalent to abridgment of the latter. (footnote omitted). I would thus hold that a showing that the performance of a defendant's lawyer departed from constitutionally prescribed standards requires a new trial regardless of whether the defendant suffered demonstrable prejudice thereby.

*Strickland,* 104 S.Ct. at 2076–77 (Marshall, J. dissenting) (emphasis supplied).

I must also take issue with the majority's conclusion that the Pennsylvania Constitution as applied in *Washington* does not create a greater protection than the Federal Constitution as interpreted by *Strickland* and that "[t]he fact

of the matter is that the identical textual and policy considerations logically lead us to hold that together they constitute an identical rule of law in this Commonwealth." (Slip Opinion at 10, footnote omitted). This conclusion is flawed because the premise underlying it is flawed. The majority's misperception of the "obvious identical textual and policy considerations" in the two tests, I have already pointed out.[2] As to the constitutional aspect, the majority ignores our line of cases which state that "[t]his court has not hesitated to interpret the Pennsylvania Constitution as affording *greater* protection to defendants than the federal Constitution." *See, Commonwealth v. Sell,* 504 Pa. 46, 64, 470 A.2d 457, 467 (1983) (emphasis supplied) and cases cited thereunder. The United States Supreme Court now restricts the rights of defendants because "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between an attorney and client," *Strickland,* 104 S.Ct. at 2066 and "to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result," *Id.* at 2069. We need not follow in blind obedience. I read the above quoted policy considerations underlying *Strickland* as an attempt by the United States Supreme Court to redefine what proper representation of counsel entails. In so doing, it appears that that court would obviate any requirement that a court hold a criminal defense attorney to the same standard of professional conduct generally mandated by the profession. If one interprets the court's policy considerations in the context of its holding in *Strickland* and takes that analysis to its logical extreme, it appears that they would hold that even the most ill-prepared attorney, filled

**2.** I note that the majority's opinion is devoid of *any* citation or discussion of policy considerations in this Commonwealth that would support its contention that we are of the same mind as the *Strickland* court and have been so since the time of *Washington.* I cannot, therefore, point to their misperception of our policy considerations as they relate to ineffectiveness. The fact of the matter is, I cannot honestly argue that they have been misperceived, only ignored.

with "sloth or lack of awareness of the alternatives" need not concern himself with his unprofessional conduct in the defense of a criminal defendant so long as he can be reasonably confident that there is overwhelming evidence of that defendant's guilt. When the highest court in this nation deems it proper to place concern over the burdens and responsibilities imposed upon a professional attorney over those of a criminal defendant in interpreting our country's constitution, I must respectfully part company with that line of reasoning and speak out in support of the broad, independent right of protection this Commonwealth has always granted to its citizens; even its citizens who stand *accused* of a crime.

We have seldom succumbed to the pressure of the United States Supreme Court's interpretation of the Federal Constitution when its provisions have been interpreted narrowly and in derogation of the rights this Commonwealth has deemed appropriate to protect its citizens. In the majority's great haste to cast off the independent rights we have conferred upon the citizens of this Commonwealth in exchange for the simplicity of becoming homogeneous with the United States Supreme Court, and thereby allowing them to make decisions and conduct analysis in our stead, we have failed to be mindful of the concerns expressed by Mr. Chief Justice (then Justice) Nix in *Commonwealth v. Sell, supra*, where, in undertaking to interpret our State Constitution in terms of the Federal Charter he observed:

> [W]e find guidance in the admonitions of Mr. Justice Brennan of the United States Supreme Court:
>
>> [T]he decisions of the Court are not, and should not be, dispositive of questions regarding rights guaranteed by counterpart provisions of state law. Accordingly, such decisions are not mechanically applicable to state law issues, and state court judges and the members of the bar seriously err if they so treat them. Rather, state court judges, and also practitioners, do well to scrutinize constitutional decisions by federal courts, for only if they are found to be logically persuasive and well-

reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees, may they properly claim persuasive weight as guideposts when interpreting counterpart state guarantees.

*Brennan, State Constitutions and the Protection of Individual Rights,* 90 Harv.L.Rev. 489, 502 (1977).

*Sell,* 504 Pa. at 49, 470 A.2d at 459. Had the majority not acted in such haste as it embraced a mechanical application of *Strickland,* it would not now be in the unenviable position of attempting to force a "square peg into a round hole".

In further support of my contention that the majority has totally ignored not only the proper application of precedent in this Commonwealth, but also the distinction between our State Constitution and the Federal Charter, I note with interest the majority's citation to *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), (Majority Opinion at 161–162, footnote 4) which the majority reads as being "an indication that the United States Supreme Court will expect, in the future, that state tribunals conduct ineffectiveness analyses via a performance and prejudice standard which, as already has been shown, is our standard." *Id.* at footnote 4. This statement, not only ignores the context in which the *Van Arsdall* decision was rendered, but again reveals the majority's perceived omnipotence of that federal court. It is clear that no derivative power can be pointed to which would allow that court to dictate to any state court, analyzing a question arising under its state constitution, the proper standard to be applied in a situation where that standard is being reviewed under a state constitution which provides *greater* protection than the minimum set forth under the Federal Charter. In *Van Arsdall,* it should be noted, the claim of ineffectiveness was addressed solely under the Sixth Amendment. For that reason, and that reason alone, it was proper for the Supreme Court to remand to the Delaware Court for proper application under the substantive standards of the Sixth Amendment as interpreted by the Supreme Court. As Mr.

Justice Marshall noted in his dissent in *Van Arsdall*, however:

> I also write to emphasize that this Court cannot *require* state courts to apply harmless-error analysis to violations of the Federal Constitution. *See, Connecticut v. Johnson*, 460 U.S. 73, 88, 103 S.Ct. 969, 978, 74 L.Ed.2d 823 (1983) (Stevens, J. concurring in judgment). While this Court has stated that federal law governs the application of harmless error to violations of the Federal Constitution, *see Chapman v. California*, 386 U.S. 18, 21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1967), that cannot mean more than that state courts *must* reverse convictions when the Constitution so mandates. When the Constitution does not mandate a particular remedy, this Court may not 'declare which of many admittedly constitutional [remedial] alternatives a state may choose.' *Id.* at 48, 87 S.Ct., at 840 (Harlan, J. dissenting) (footnote omitted). We have never held that the Federal Constitution forbids state courts from reversing certain convictions pursuant to state substantive or procedural law, nor can I imagine what provision of the Constitution could grant us such power. Thus, the Delaware Supreme Court remains free on remand to decide that even though it applied the substantive standards of the Sixth Amendment to determine whether error occurred, its harmless error analysis was the product of state rather than federal Law.

*Van Arsdall*, 106 S.Ct. at 1440–41 (Marshall, J. dissenting) (emphasis in original). I must therefore reject outright any inference which could be drawn from the majority's observations of the Supreme Court's intent in *Van Arsdall*, as indicating *this* Court's willingness to abdicate *any* of its interpretive functions where an appellate question implicates rights guaranteed under *our* state constitution.

As we continue to place greater, and at times insurmountable burdens of proof upon a defendant, as the majority does today, we increasingly retreat to the ancient precept that a criminal defendant is cloaked in the presumption of *guilt* until he proves his innocence. It was, in large part,

for this very reason, the harsh results experienced in the jurisprudential application of the presumption of guilt that prompted the migration of the Europeans to this Commonwealth over 200 years ago. The inequity of that system was that many innocent individuals suffered punishment because they could not overcome the overwhelming burden of proving themselves innocent of charges, the evidence of which was in the sole possession of the accusors. I do not choose to move one step closer to that system. I must therefore dissent from what I characterized in *Christy* to be nothing more than a move by this Court toward a "short-cut, result-oriented practice of jurisprudence." *Commonwealth v. Christy*, 511 Pa. 490, 519, 515 A.2d 832, 847 (1986) (Zappala, J. dissenting).