**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-1682

_____

SAMUEL SANTIAGO PEREZ,
                            Appellant

v.

GERALD ROZUM, Superintendent SCI Somerset;
ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA;
DISTRICT ATTORNEY OF LANCASTER COUNTY

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 3:07-cv-00305)
District Judge:  Honorable Kim R. Gibson

_____

Argued January 24, 2012

Before:  McKEE, *Chief Judge*, FISHER and GREENAWAY, JR., *Circuit Judges*

(Opinion Filed: July 13, 2012)

Robert E. Mielnicki, Esq. (Argued)
Seewald, Mielnicki & Petro
429 Forbes Avenue
700 Allegheny Building
Pittsburgh, PA 15219
        *Attorney for Appellant*

Andrew J. Gonzalez, Esq. (Argued)
Lancaster County Office of District Attorney
50 North Duke Street
Lancaster, PA 17608
        *Attorney for Appellees*

McKEE, *Chief Judge*.

Pennsylvania state prisoner Samuel Santiago Perez appeals the District Court's

denial of his habeas corpus petition filed pursuant to 28 U.S.C. § 2254.  For the reasons

that follow, we will affirm.

I.

In 2000, Perez was charged with criminal homicide and criminal conspiracy in

connection with the shooting death of Leslie Samaniego, an innocent bystander killed

during a shootout between rival groups in Lancaster, Pennsylvania.  The

Commonwealth's theory of the case at trial was that Perez, a member of one of the

groups, had fired gunshots at the rival group, that a bullet fired by one of those rivals had

killed Samaniego, and that Perez could be held criminally responsible for her death

pursuant to Pennsylvania's doctrine of transferred intent.  Under that doctrine,

> if an individual shoots at others and that provokes a return of
> fire by the intended targets resulting in the striking of a
> bystander, the individual who initiates the gunfire may be
> held criminally responsible for the injuries sustained by the
> victim; that is, the intent to kill may be established as to one
> person and transferred to a victim caught and killed in the
> same incident.

(J.A. at 304 (citing *Commonwealth v. Devine*, 750 A.2d 899 (Pa. Super. 2000).)

The trial court instructed the jury that "the key difference" between first-degree

2

murder and third-degree murder "is that first-degree murder requires something called a specific intent to kill." (J.A. at 793.) As part of its instructions on specific intent, the court stated that "[t]he use of a deadly weapon on a vital part of the victim's body may be considered as an item of circumstantial evidence from which you may, if you choose, infer that the defendant had the specific intent to kill." (*Id.*)

During its deliberations, the jury asked the court to explain again the difference between first-degree murder and third-degree murder. The court responded by reiterating its previous instructions, including the deadly weapon instruction. Thereafter, the jury resumed its deliberations and found Perez guilty of first-degree murder and criminal conspiracy. The trial court sentenced him to life imprisonment for the murder conviction, and imposed a concurrent 10- to 20-year prison term for the conspiracy conviction.

On direct appeal, Perez argued, *inter alia*, that his trial counsel had been ineffective for failing to object to the deadly weapon instruction, for the Commonwealth had conceded that neither Perez nor his alleged co-conspirator had shot Samaniego. The Pennsylvania Superior Court rejected all of Perez's claims and affirmed the judgment of sentence. Despite noting that his allegation of ineffectiveness had "arguable merit," the Superior Court concluded that this claim nonetheless failed because he had not shown that he was prejudiced by counsel's failure to object to the instruction.

Perez subsequently petitioned the Pennsylvania Supreme Court to review the Superior Court's decision. In a per curiam order, the Pennsylvania Supreme Court, citing its decision in *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) (holding that, "as a

3

general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review"), granted the petition as to Perez's deadly weapon instruction claim, vacated the Superior Court's disposition of that claim, and dismissed the appeal without prejudice to consideration of that claim on collateral review.

Thereafter, Perez filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), reiterating his deadly weapon instruction claim and presenting two new ineffectiveness claims. After holding an evidentiary hearing, the trial court denied the petition. The Superior Court affirmed that judgment, concluding, as it had before, that Perez had not shown that he was prejudiced by trial counsel's failure to object to the deadly weapon instruction.

After the Pennsylvania Supreme Court denied Perez's petition to review the Superior Court's latest decision, he timely filed a habeas petition in the District Court pursuant to § 2254, raising his three PCRA claims and a sufficiency of the evidence claim that he had exhausted on direct appeal. The District Court referred the case to a Magistrate Judge, who recommended that the court deny Perez's habeas petition on the merits. Despite characterizing the Superior Court's analysis of the deadly weapon instruction claim as "a bit of hand waving," (J.A. at 24), the Magistrate Judge determined that "fairminded jurists could easily agree with the Superior Court's analysis (and find that a reasonable juror would have simply ignored the challenged instruction as irrelevant because there was no evidence Perez shot Samaniego)." (*Id.* at 25.) As a result, the Magistrate Judge concluded that the Superior Court's analysis was not an unreasonable

4

application of *Strickland v. Washington*, 466 U.S. 668 (1984), and thus did not warrant habeas relief.

On March 4, 2011, the District Court denied Perez's habeas petition, but also granted a certificate of appealability ("COA") as to Perez's deadly weapon instruction claim. This appeal followed.[1]

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 2254, and we have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. We review a district court's denial of habeas relief de novo. *Vega v. United States*, 493 F.3d 310, 314 (3d Cir. 2007). Where, as here, the state court has denied the petitioner's claim on the merits, we may grant habeas relief only if that state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2] 28 U.S.C.

---

[1] Perez moved to expand the COA, but we denied that motion; therefore, his deadly weapon instruction claim is the only claim before us.

[2] We find no merit to Perez's argument that § 2254(d)'s deferential standard does not apply here because the Superior Court "never analyzed [his] claim under clearly established federal law." (Pet'r's Br. 45.) The United States Supreme Court "ha[s] made clear that as long as the reasoning of the state court does not contradict relevant Supreme Court precedent, [§ 2254(d)'s] general rule of deference applies." *Priester v. Vaughn*, 382 F.3d 394, 397-98 (3d Cir. 2004) (citing *Early v. Packer*, 537 U.S. 3 (2002), and *Woodford v. Visciotti*, 537 U.S. 19 (2002)). Although the Superior Court did not cite the clearly established federal law at issue here — the Supreme Court's decision in *Strickland* — it *did* apply Pennsylvania's three-part test for evaluating ineffectiveness claims. (*See* J.A. at 197 (reciting Pennsylvania's three-part test and citing

5

§ 2254(d).  "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."[3]  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted).

In determining whether a state court has unreasonably applied clearly established federal law,[4] "a habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  "The question is not whether the state court's holding was wrong, but whether it was reasonable.  Indeed, 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'"  *Brown v.*

---

*Commonwealth v. Hawkins*, 894 A.2d 716, 721 (Pa. 2006)).)  Because "th[is] state standard is 'the same' as *Strickland*'s," *Rompilla v. Horn*, 355 F.3d 233, 248 (3d Cir. 2004), *rev'd on other grounds sub nom. Rompilla v. Beard*, 545 U.S. 374 (2005) (quoting *Commonwealth v. Pierce*, 527 A.2d 973, 976-77 (Pa. 1987)), we agree with the District Court that § 2254(d) applies here.  *See also Boyd v. Warden*, 579 F.3d 330, 334 n.2 (3d Cir. 2009) (en banc) (Scirica, C.J., concurring) ("[A] Pennsylvania court has adjudicated a *Strickland* claim on the merits where it has applied the state-law standard to that claim.").

[3] As the Supreme Court recently stated in *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012) (per curiam), the state court's determination "is entitled to considerable deference under [§ 2254(d)]."

[4] Perez argues that § 2254(d)'s "unreasonable determination of the facts" prong is also implicated here because the Superior Court erroneously determined that the trial court's deadly weapon instruction was a correct statement of law.  But that conclusion was a legal, not a factual, determination.  Accordingly, only § 2254(d)'s "unreasonable application" prong applies here.

*Wenerowicz*, 663 F.3d 619, 630 (3d Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 786).

III.

We analyze Perez's deadly weapon instruction claim under *Strickland*'s two-prong test for evaluating ineffectiveness of counsel claims. Under this test, a petitioner must show (1) that his counsel's performance was deficient, and (2) that the petitioner was prejudiced by this deficient performance. *Strickland*, 466 U.S. at 687. To satisfy the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Because § 2254(d)'s deferential standard applies here, the question before us is whether the Superior Court's conclusion that Perez had not shown prejudice was an unreasonable application of *Strickland*. In considering this question, we must analyze "the challenged instruction in the context of the entire charge and in light of the evidence and arguments presented at trial." *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011).

It is undisputed that the deadly weapon instruction was inapplicable to Perez's case, for there was no evidence that he had used a deadly weapon on a vital part of Samaniego's body. While the Superior Court viewed this instruction as "merely superfluous" in light of the trial court's remaining instructions on specific intent,[5] (J.A. at

---

[5] Perez does not dispute that the balance of the trial court's instructions on specific intent, which immediately preceded the deadly weapon instruction, applied to his case and

7

199), Perez disagrees. He contends that, because the instruction used the phrase "the use of a deadly weapon," not "*the defendant's* use of a deadly weapon," the jury may have believed — incorrectly — that it could infer his specific intent to kill from *anyone's* use of a deadly weapon on a vital part of Samaniego's body.

Perez's argument is not without some merit. But even if the jury *did* interpret the trial court's deadly weapon instruction to mean that it could infer his specific intent to kill from anyone's use of a deadly weapon on a vital part of Samaniego's body, it does not necessarily follow that the outcome of his trial hinged on that instruction. Rather, that

---

correctly stated Pennsylvania law. Those instructions were as follows:

> A person has the specific intent to kill if he has a fully-formed intent to kill and is conscious of his own intention. As my earlier definition of malice indicates, a killing by a person who has a specific intent to kill would, of course, be a killing with malice.
>
> Stated differently, a killing is with a specific intent to kill if it is willful, deliberate, and premeditated. The specific intent to kill, including premeditation needed for first-degree murder, does not require planning or previous thought for any particular length of time. It can occur quickly.
>
> All that is necessary is that there be enough time so that the defendant can and does fully form an intent to kill and is conscious of that intention.
>
> When deciding whether the defendant had the specific intent to kill, you should consider all the evidence regarding his words and conduct and the attending circumstances that may show his state of mind.

(J.A. at 793.)

instruction affected the outcome of his trial only if (1) the jury believed that it could construe anyone's use of a deadly weapon on a vital part of Samaniego's body as evidence of Perez's specific intent to kill, *and* (2) the jury determined that, without this evidence, the Commonwealth could not meet its burden of establishing that Perez had possessed a specific intent to kill.

To be sure, it is *possible* that both of these conditions were present here. But Perez must show much more than that to obtain habeas relief; he must establish not only that there is a reasonable probability that these conditions were present (i.e., that he was prejudiced by trial counsel's failure to object to the instruction), but also that the Superior Court acted unreasonably in concluding that there was no such prejudice. Having reviewed the evidence at trial and considered the jury charge as a whole, we do not necessarily disagree with Perez's claim of prejudice. Nevertheless, we cannot, on this record, conclude that the Superior Court's decision to the contrary was unreasonable. Accordingly, we agree with the District Court's decision to deny Perez habeas relief.

IV.

In light of the above, we will affirm the District Court's March 4, 2011 order.