J-S54020-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ENRICO THOEDIS RHODES, SR. | : | |
| | : | |
| Appellant | : | No. 133 WDA 2018 |

Appeal from the PCRA Order December 28, 2017
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0000564-2015

BEFORE:  PANELLA, J., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.:                    FILED NOVEMBER 08, 2018

Enrico Thoedis Rhodes, Sr., appeals from the order denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Upon review, we affirm.

Robert Butch, a drug addict, worked at his parents' business, Butch Auto Salvage.   Gary and Cynthia Butch, Robert Butch's parents, lived in an apartment above their salvage yard office.   A tall cyclone fence with locks enclosed both the salvage yard and the apartment.   Butch's parents decided they had had enough of his drug addiction and wrote him a letter forbidding him from entering the entire auto salvage property, including their apartment. Thereafter, Butch's parents changed the locks on the fence and building

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

because Butch had a key to the previous locks. Gary and Cynthia Butch locked the fence and building around 5:00 P.M. on the day in question.

Butch owed a drug debt to Carl Hammonds. To repay this debt, Butch planned to give Hammonds a sport utility vehicle. Butch went to Youngstown, Ohio to pick up Hammonds and bring him back to Grove City. Rhodes accompanied them on the ride back.

On August 15, 2014, around 8:00 p.m., while at Butch's home, which was located across from the salvage yard, Hammonds decided he did not want the SUV and instead wanted cash. Butch informed Hammonds he owned a safe, which contained cash, at the salvage yard. Butch told Hammonds he was forbidden to be on the salvage yard premises, but Hammonds allegedly insisted they go get the safe anyway. The three men walked across State Route 58, through high grass and weeds, crawled under the fence, broke a few windows and entered the salvage yard building. Hammonds and Rhodes carried the heavy black safe back through the field, where Butch met them with his car, a Volkswagen Beetle.

At the same time, Sheriff Gary Hartman was returning from dinner with his family and observed two black males carrying a heavy object out of the high grass field, which he found suspicious. Sheriff Hartman exited the car and encountered Butch, who told the officer a story about keeping his safe near a tree stand so his girlfriend would not find it. By this point, the safe was in the trunk of Butch's Volkswagen. Hammonds and Rhodes, the two

- 2 -

black men Sheriff Hartman had seen walking out of the field, were sweating and appeared fidgety in the back seat of Butch's car.

Trooper Timothy Callahan of the Pennsylvania State Police arrived and Sheriff Hartman filled him in on what he had observed. Sheriff Hartman remained as backup until other state troopers arrived. Trooper Callahan asked the three men to exit the car and, after having a conversation with Butch, conducted a safety frisk on each of the individuals and found nothing. Trooper Callahan searched the car, for safety, and found a jacket. The jacket contained items that did not feel like weapons or contraband. Trooper Callahan pulled the items out of the pocket and found them to be a wallet and gold jewelry, which he subsequently placed back in the pocket. Rhodes asked for the jacket because he was chilly, even though he was visibly sweating. As Trooper Callahan handed Rhodes the jacket, the wallet fell out, at which time Rhodes identified the wallet as his. Trooper Callahan looked inside the wallet and noticed it was brand new, unused and still had cardboard inside. Trooper Callahan subsequently let the three men go.

About a half hour after letting the men go, Trooper Callahan received a call that Butch's Salvage Yard had been burglarized. Upon responding to that call, Gary Butch informed Trooper Callahan that a window was broken, and a safe, money, jewelry and wallets were missing. Gary Butch stated that the wallets were in new condition, still containing the cardboard, because they were gifts.

On June 1, 2015, the District Attorney's Office filed a criminal information charging Rhodes with burglary, theft by unlawful taking, criminal conspiracy/burglary, criminal conspiracy/theft, criminal trespass and criminal mischief. Thereafter, Rhodes filed an omnibus pre-trial motion, which the court granted in part by finding Trooper Callahan's initial search of the jacket to be unlawful because the pat-down search of it clearly indicated it did not contain a weapon. The court, therefore, suppressed the wallet and jewelry found during that initial search of Rhodes' jacket as well as any reference made to them or Rhodes' statements about them.[2] See Trial Court Order, 8/5/15. However, the court ruled that the events that occurred after Rhodes asked for the jacket -- the wallet falling out, Rhodes' statement that the wallet was his and the trooper's description of the wallet-- would be admissible at trial. Trial Court's Rule 1925(a) Opinion, 4/4/18, at 4-7.

_____

[2] In Rhodes' motion to suppress, he alleged, "after charges were filed, it became clear that law enforcement was trying [to] link the items found in the jacket, [the jewelry and wallet], with items allegedly taken from [Gary and Cynthia Butch] during the alleged burglary." Appellant's Omnibus Pretrial Motion to Suppress, 7/2/15.

On September 25, 2015, a jury convicted Rhodes of theft by unlawful taking,[3] criminal conspiracy,[4] criminal trespass,[5] and criminal mischief.[6] On April 1, 2016, the court sentenced Rhodes to an aggregate term of incarceration in a state correctional facility of not less than 36 months, but not more than 100 months.[7] Id. at 1-2. Rhodes filed a direct appeal, and this Court affirmed his judgment of sentence. See Commonwealth v. Rhodes, No. 628 WDA 2016 (Pa. Super. filed April 6, 2017) (unpublished memorandum).

On August 31, 2017, Rhodes filed a timely pro se PCRA petition. Thereafter, the court appointed counsel for Rhodes, who filed an amended petition challenging trial counsel's effectiveness. Specifically, Rhodes claimed counsel was ineffective in failing to object to Trooper Callahan's testimony about the contents of the wallet after it fell out of the pocket of the jacket and for failing to raise this issue in the Rule 1925(b) statement. By order dated January 3, 2018, the PCRA court denied relief. This appeal followed.

_____

[3] 18 Pa.C.S.A. § 3921(a).

[4] 18 Pa.C.S.A. §§ 903 & 3921(a).

[5] 18 Pa.C.S.A. § 3503(a)(1)(ii).

[6] 18 Pa.C.S.A. § 3304(a)(5).

[7] Butch was not charged with stealing the safe or its contents, instead he was charged with stealing other cash and items inside the building. Trial Court's Rule 1925(a) Opinion, 7/22/16, at 8.

- 5 -

On appeal, Rhodes raises the following issues:

> [Whether] the [PCRA c]ourt erred when [it] failed to find [Rhodes'] trial counsel ineffective for (1) not including in [the Rule 1925(b)] Statement of [Errors] Complained of on Appeal that the Commonwealth improperly referenced the contents of the wallet when the wallet fell from [Rhodes'] jacket and/or (2) failing to object to the testimony of Commonwealth Witness Trooper Callahan . . . relative to the contents and/or appearance of the wallet when the wallet fell from [Rhodes'] jacket.

Appellant's Brief, at 4.

The standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. Commonwealth v. Allen, 732 A.2d 582, 586 (Pa. 1999). The reviewing court gives great deference to the PCRA court findings if the record contains any support for these findings. See Commonwealth v. Carr, 768 A.2d 1164, 1166 (Pa. 2001) (emphasis added).

Rhodes' claims on appeal challenge trial counsel's effectiveness. "To prevail on an ineffectiveness claim, appellant must demonstrate that: (1) his claims are of arguable merit, (2) counsel had no reasonable basis for his actions, and (3) counsel's actions prejudiced appellant." Allen, 732 A.2d at 587; see also Commonwealth v. Pierce, 527 A.2d 973, 975 (Pa. Super. 1987). Relating to the prejudice prong of the ineffectiveness test, the PCRA petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." Commonwealth v. Ly, 980 A.2d 61, 73 (Pa. 2009).

The court found the initial search of the jacket unlawful and suppressed any reference to the contents stemming from that search as fruit of the poisonous tree. However, the court also ruled that evidence relating to the wallet arising after it fell out of the jacket pocket was admissible. Trooper Callahan's testimony did not violate the court's suppression order, as it related to the latter time-period. Moreover, counsel had a reasonable basis for not objecting. Although there was some discrepancy in Trooper Callahan's testimony with respect to the sequence of events, in particular, at what point he opened the wallet (at the suppression hearing, he testified he opened the wallet during the initial search that was suppressed; at trial, he testified that he opened it after it fell out of the jacket), trial counsel testified that he did not object because he did not want to draw further attention to this issue. Thus, Rhodes failed to establish that trial counsel lacked a strategic basis for choosing to forego an objection. See Commonwealth v. Koehler, 36 A.3d 121, 132 (Pa. 2012) (counsel's decision not to object and to avoid highlighting issue for jury was objectively reasonable strategy). Finally, Rhodes did not establish that but for counsel's failure to object to this testimony, the result would have been different. The evidence at trial, including the testimony of co-defendant Robert Butch, as well as that of Sherriff Hartman and Trooper Callahan, placed Rhodes at the scene. See Ly, supra.

The PCRA court's findings are supported by the record. Allen, supra. We, therefore, affirm the PCRA court's order denying relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2018