J-S17036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH ANTHONY MARKIJOHN, II | : | |
| | : | |
| Appellant | : | No. 489 WDA 2022 |

Appeal from the PCRA Order Entered April 22, 2022
In the Court of Common Pleas of Lawrence County
Criminal Division at No(s):  CP-37-CR-0000445-2015

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: OCTOBER 3, 2023**

Appellant, Joseph Anthony Markijohn, II, appeals from the order entered in the Lawrence County Court of Common Pleas, which dismissed his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

A prior panel of this Court set forth the relevant facts of this case as follows:

> On December 28, 2014, Kaitlyn Kerezsi and Appellant, her boyfriend at the time, had planned to visit his friend, Joseph Pagley (the "Decedent"), in New Castle.  The Decedent supplied Appellant with marijuana.  However, when Ms. Kerezsi woke that morning, Appellant informed her that only he would be traveling to New Castle.  He packed a bag with a change of clothes and left in his green Jeep Cherokee around 1 p.m.
>
> Between 5:30 and 6:00 p.m., wearing a new sweatshirt, Appellant returned from New Castle with five pounds of marijuana and a large amount of cash.  The pair went to a

local Walmart, purchased a safe and glass jars, returned home, and proceeded to repackage the marijuana. Appellant began selling this marijuana to friends the following day.

This was more marijuana than Ms. Kerezsi had seen previously in Appellant's possession. When asked about the large quantity, Appellant suggested to Ms. Kerezsi that he and the Decedent had robbed a rival marijuana growing operation. According to Appellant, he had used a small pistol to shoot a lock on the shed containing the marijuana. Appellant told Ms. Kerezsi that he disposed of the gun and that she should deny he had possessed one.

Earlier that day, the Decedent informed his girlfriend, Shayna Magno, that he had plans to meet someone from out of town at his house and that, therefore, she had to leave. Ms. Magno left, met a friend, and began using heroin. Apparently, the Decedent concluded that Ms. Magno was using heroin, which precipitated an argument between the two via text messaging and cellphone calls. However, at 3:32 p.m., the Decedent's phone was turned off, and Ms. Magno had no further contact with him.

Sometime between 3:00 and 4:00 p.m., Appellant met the Decedent at the Roupp residence. Surveillance video later recovered from a local business showed Appellant's Jeep Cherokee following the Decedent's vehicle in the direction of the Decedent's house at 3:44 p.m.

Over the next several hours, Ms. Magno tried repeatedly but unsuccessfully to contact the Decedent. Eventually, at 10:40 p.m., Ms. Magno was able to reach a mutual friend, David Roupp. She inquired as to the Decedent's whereabouts, but Mr. Roupp had not seen or heard from him.

Ms. Magno returned to the Decedent's house. His vehicle was parked outside; the front door was unlocked; however, the home was unlit, and he did not appear to be there. Unnerved by this, Ms. Magno again called Mr. Roupp, who came to the house. Upon searching the basement, Mr. Roupp discovered the Decedent's dead body.

An investigation ensued. Police recovered three .25 caliber shell casings in the basement surrounding the Decedent's body. In addition, an autopsy determined that the cause of his death was three gunshot wounds to the head, and the manner of death was homicide. Each of the three .25 caliber slugs recovered from his head had been fired from the same weapon.

Although he would later deny it, Appellant possessed a .25 caliber pistol. Appellant's mother gave him such a pistol for protection sometime in 2014. Ms. Kerezsi observed a small pistol hidden underneath Appellant's mattress. In addition, Mr. Roupp had witnessed Appellant threaten another friend with a small, black pistol during an argument. Finally, Appellant had posted pictures of a .25 caliber pistol on social media. Following his arrest, Appellant directed Ms. Kerezsi to shut down his social media accounts, and she complied.

On December 30, 2014, Terrance Albright, a random passer-by, found an iPhone under a guardrail close to the Smolen-Gulf Bridge in Ashtabula, Ohio, where Appellant resided. Guessing the manufacturer's default password and unlocking the phone, Mr. Albright learned that it belonged to the Decedent. He contacted the Decedent's father, who in turn contacted the police. The bridge is approximately 3.5 miles from Appellant's home and 85 miles from the Decedent's house.

On December 31, 2014, executing a search warrant on Appellant's home, police discovered and seized several pounds of marijuana. The marijuana was stored in jars labelled "Blue Dream" and "Fu Dawg." Text messages exchanged between Appellant and the Decedent, prior to their meeting, referenced these particular brands. Further, notwithstanding his story of the rival robbery, Appellant acknowledged that he had been present in the Decedent's house as late as 4 p.m. on the date of the murder and that the marijuana seized from his home had come from the Decedent's house.

Police arrested Appellant and charged him with murder and robbery. …

***Commonwealth v. Markijohn***, No. 827 WDA 2019, unpublished

memorandum at 1-5 (Pa.Super. filed January 22, 2020) (internal citations and footnotes omitted), *appeal denied*, 661 Pa. 484, 236 A.3d 1052 (2020).

A jury convicted Appellant of first-degree murder and robbery. On December 5, 2018, the trial court sentenced Appellant to life imprisonment. This Court affirmed Appellant's judgment of sentence on January 22, 2020, and our Supreme Court denied Appellant's petition for allowance of appeal on June 29, 2020. **See id.**

Appellant filed a timely PCRA petition on December 18, 2020. The court conducted hearings on May 25, 2021, September 9, 2021, and November 1, 2021. The PCRA court summarized the testimony from the PCRA hearings as follows:

> [On May 25, 2021, Appellant] presented the testimony of his trial counsel, Steven Valsamidis, Esquire, concerning numerous aspects of his representation of [Appellant]. Attorney Valsamidis recalled having conversations about retaining a private investigator. However, it was unlikely a private investigator would have been able to locate the grow shed robbed by [Appellant] and Decedent as [Appellant] could not recall the route they traveled to get to that location. Attorney Valsamidis believed that could be used by the Commonwealth to damage [Appellant's] credibility if he hired a private investigator and they were unable to locate the shed. At the conclusion of that conversation with [Appellant], Attorney Valsamidis asked [Appellant] if the private investigator would find the grow shed and if he wanted to hire a private investigator. [Appellant] remained silent and Attorney Valsamidis understood that to mean he did not wish to hire a private investigator at that time. Attorney Valsamidis also did not believe hiring a private investigator to investigate Ms. Magno would have been productive as the defense was based upon someone associated with the grow shed being the perpetrator and Ms. Magno was not involved with that operation. Although,

- 4 -

Attorney Valsamidis acknowledged Ms. Magno was a person of interest in the homicide based upon the testimony of one of the Pennsylvania State Troopers.

Attorney Valsamidis also explained he did not feel it was necessary to file a notice of alibi defense as Defendant's version of events left the possibility he was in New Castle at the time of the homicide. Under those circumstances, Attorney Valsamidis did not believe an alibi defense or instruction to the jury was necessary.

[Appellant's] counsel inquired as to why Attorney Valsamidis did not file a motion *in limine* as it pertained to [Appellant's] lip tattoo of the word "Kill." It was his opinion that tattoo is easily explainable because [Appellant] was a Marine years earlier and he believed it demonstrated desperation on behalf of the Commonwealth to emphasize the tattoo. In relation to a prior incident in which another individual became upset at [Appellant's] mother's residence and began destroying her bedroom causing [Appellant] to brandish a .25 caliber pistol, Attorney Valsamidis did not file an objection as there was no basis to do so because the Commonwealth was introducing it for the legitimate purpose of demonstrating [Appellant] possessed a firearm to impeach his prior statement to the Troopers denying possession of a firearm. At the time that was presented to the jury, the Commonwealth did not know whether [Appellant] was going to testify.

When questioned about calling character witnesses to testify on [Appellant's] behalf, Attorney Valsamidis indicated they attempted to locate witnesses. He had conversations with several of [Appellant's] friends from his time in the military about appearing at trial, but they had not been around [Appellant] for an extended period of time. [Appellant] identified several potential character witnesses and Attorney Valsamidis recalled having conversations with at least two of them. He then explained two of the witnesses he spoke with had not been in [Appellant's] company for a "significant period of time". In addition, Attorney Valsamidis recalled one of those individuals, Hunter Bernard, left a message for Attorney Valsamidis indicating he was unavailable for trial. Attorney Valsamidis did not subpoena Mr. Bernard based upon his belief subpoenaing a witness who is supposed to

be favorable but is not cooperative often will not result in favorable testimony.

Another hearing was scheduled for September 9, 2021, to allow for further testimony to be presented. On that date, [Appellant] testified concerning his statement to Troopers Gustafson and Birckbichler on December 31, 2014. [Appellant] admitted he lied to them about possessing the firearm because he feared he would get into trouble for providing it to Decedent. Following the interview, [Appellant] was arrested and transported to Lawrence County, Pennsylvania. Initially, [Appellant] was represented by Lawrence J. Keith, Esquire, and Dennis A. Eliseo, Esquire, of the Lawrence County Public Defender's Office; however, [Appellant] wanted a change of counsel due to not receiving responses to his inquiries. The [c]ourt then appointed John J. Bongivengo, Esquire, to represent [Appellant], who [Appellant] never actually met because he privately retained Attorney Valsamidis. They thoroughly discussed the events of December 28, 2014, which included [Appellant's] reasoning for providing the firearm to Decedent. [Appellant] indicated he lied about it to the Troopers as Decedent had a felony conviction and it is illegal to provide a firearm to a convicted felon. [Appellant] also indicated Attorney Valsamidis was aware of his description concerning the location of the shed he and Decedent broke into and from which they stole marijuana.

According to [Appellant], he and Attorney Valsamidis never discussed hiring a private investigator or about cell phone technology. Conversely, they spoke about potential character witnesses and, according to [Appellant], he provided Attorney Valsamidis with the names Hunter Bernard, Coralyn Thompson and Edward Crawford, II. [Appellant] stated those individuals were willing to testify on his behalf as character witnesses.

Another hearing was held on November 1, 2021, to permit [Appellant] to present the testimony of two of his proposed character witnesses, Edward Crawford, II, and Coralyn Thompson. Mr. Crawford testified he has never been convicted of a felony or any crime of dishonesty. He is familiar with [Appellant] as they previously worked together at Ringer Screen Print in approximately 2013. Their families

were friends and [Appellant] used to "hang out" at his house when they were younger. Mr. Crawford and [Appellant] would often socialize after work until [Appellant] was arrested for Decedent's homicide. Eventually, [Appellant's] mother, Anna Dixon, contacted Mr. Crawford to ask him to testify on [Appellant's] behalf as a character witness, but he did not recall receiving a telephone call from Attorney Valsamidis. Mr. Crawford testified he was ready, willing and able to testify to [Appellant's] good character at trial. However, Mr. Crawford was never subpoenaed by Attorney Valsamidis to appear at trial. On cross-examination, Mr. Crawford stated he probably would not have traveled here to testify at trial as "this is all nervous to me, I guess, you know, nerve wracking...." He also explained he would have been upset if he were compelled to testify at trial. Mr. Crawford indicated he was in [Appellant's] presence when he used and sold marijuana.

Ms. Thompson also testified at that hearing and explained she has been a friend of [Appellant] since [Appellant] was in the first grade. The last time she saw [Appellant] was in 2013 at her brother's funeral, but they kept in touch through regular communications via the telephone. They lost touch briefly then [Appellant] began contacting her by telephone during his incarceration. As trial was approaching, [Appellant] and Ms. Dixon asked Ms. Thompson if she would be willing to be a character witness for [Appellant]. Attorney Valsamidis did not contact Ms. Thompson concerning her willingness to testify at trial. Ms. Thompson indicated she has not been convicted of any felonies or crimes of dishonesty. She stated she was ready, willing and able to testify on [Appellant's] behalf as a character witness. On cross-examination, Ms. Thompson testified she did not appear at trial because she was not compelled to do so but would have attended if she received a subpoena. She also indicated she knew [Appellant] was a marijuana user but did not know he dealt marijuana.

(PCRA Court Opinion, filed 5/20/22, at 8-12).

On April 22, 2022, the PCRA court issued its order denying PCRA relief.

Appellant timely filed a notice of appeal on April 28, 2022. The PCRA court

subsequently ordered Appellant to file a concise statement of errors complained of on appeal, and Appellant complied on May 12, 2022.

Appellant raises the following nine issues on appeal:

1. Whether the PCRA court erred by denying Appellant a new trial based on ineffective assistance of counsel because trial counsel unreasonably failed to call character witnesses on Appellant's behalf at trial?

2. Whether the PCRA court erred by denying Appellant a new trial on the basis of ineffective assistance of trial counsel for failing to file a notice of alibi and pursue that defense at trial by requesting an alibi jury instruction?

3. Whether the PCRA court erred in denying Appellant a new trial based on ineffective assistance of trial counsel because of trial counsel's concessions (twice) during closing argument establishing the window of time when death occurred when the Commonwealth could not establish a time of death and said concessions contradicted the defense that Appellant was not the last person to see the decedent alive?

4. Whether the PCRA court erred in denying Appellant a new trial for trial counsel's failure to hire a private investigator to explore various issues crucial to preparing and presenting a defense at trial?

5. Whether the PCRA court erred when it failed to grant Appellant a new trial based on ineffective assistance of counsel when trial counsel failed to file a motion *in limine* or object on record at trial to prejudicial evidence introduced by the Commonwealth?

6. Whether the PCRA court erred by denying Appellant relief in the form of a new trial for its findings of facts are not supported by the record and its conclusions a product of legal error, on the issue of trial counsel's testimony that decedent's killer(s) followed Appellant home and planted a cell phone, when no such theory or evidence was ever presented at trial?

7. Whether PCRA counsel [was] ineffective for failing to properly preserve issues related to DNA testing of physical evidence in his concise statement of matters complained of on appeal?

8. Whether the [PCRA] court erred in not appointing an expert to conduct DNA testing on the cigarette butt found at the crime scene?

9. Whether this Court should remand the case to the [PCRA] court to allow DNA testing of a cigarette butt pursuant to 42 Pa.C.S.A. § 9543.1(d)(1)?

(Appellant's Brief at 1-2).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. *Commonwealth v. Ford*, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. *Commonwealth v. Dennis*, 609 Pa. 442, 17 A.3d 297 (2011).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Craig Cox, we conclude Appellants first through sixth issues on appeal merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of those claims. (*See* PCRA Court Opinion at 13-21, 23-24) (finding: (1) trial counsel

- 9 -

had reasonable basis not to call character witness who was unwilling or reluctant to testify, and counsel had reasonable basis not to call witness whom he was unaware of at time of trial and who did not know Appellant well in any event; (2) counsel was not ineffective for declining to file notice of alibi when Appellant testified he was with Decedent on day of homicide; timeframe of events set forth by Appellant did not render it impossible for him to have been with Decedent at time Decedent was killed; thus, alibi instruction would not have been appropriate; (3) counsel had reasonable basis for arguing that time of Decedent's death was between 3:30 p.m. and 6:30 p.m. because such timeline aligned with defense theory of case that perpetrators followed Appellant after murder to Ashtabula, Ohio, where they disposed of Decedent's cell phone; (4) counsel was not ineffective for failing to hire private investigator to locate grow shed where Appellant was unable to provide adequate explanation of location of grow shed, which could have called into question Appellant's version of events from day of murder; further, Appellant did not establish how investigation into Ms. Magno and her associates would be helpful to his defense; (5) counsel was not ineffective for failing to object to or file motion *in limine* concerning evidence of Appellant's lip tattoo reading "KILL" or his Twitter post about shooting guns, where evidence was introduced to impeach Appellant's testimony that he was peaceful and loving "hippie"; counsel also acted reasonably in failing to object to testimony concerning unrelated incident of Appellant brandishing firearm because Commonwealth

introduced that testimony to show that Appellant had possessed firearm; moreover, court gave curative instruction concerning this testimony (6) trial counsel testified at PCRA hearing that defense presented at trial was predicated upon involvement of owners of grow shed, and that Decedent's death was act of retribution for Appellant and Decedent robbing shed; although Appellant now claims that trial counsel provided "false narrative" about owners of shed occupying vehicle that followed Appellant to Ohio after murder, Appellant was well aware of defense throughout trial and he testified consistently with defense theory of case; PCRA court found trial counsel's testimony credible concerning defense strategy at trial based on testimony and evidence of record).  The record supports the PCRA court's analysis of Appellant's first through sixth issues, and we affirm on the basis of the PCRA court's opinion concerning those claims of error. **See Ford, supra**.  **See also Dennis, supra**.

In his seventh issue, Appellant raises a layered claim of ineffective assistance of counsel.  He argues that PCRA counsel was ineffective for failing to include in the concise statement of errors complained of on appeal, Appellant's claim that trial counsel was ineffective for failing to pursue DNA testing of a cigarette butt found near Decedent's body.  Appellant acknowledges that PCRA counsel raised the issue of trial counsel's ineffectiveness on this ground in his PCRA petition, but Appellant insists PCRA counsel was ineffective for failing to include this issue in his Rule 1925(b)

statement, constituting waiver of the claim on appeal.[1]

As to the underlying claim of trial counsel's ineffectiveness, Appellant argues that he smoked a different brand of cigarette than the one found near Decedent's body and that testing of the cigarette butt would reveal exculpatory evidence of the identity of the true killer. Appellant contends trial counsel had no reasonable basis for failing to seek DNA testing and counsel's refusal to pursue such testing prevented Appellant from establishing a third-party culpability defense. Appellant concludes trial counsel was ineffective on this basis, and PCRA counsel was ineffective for failing to preserve this claim of error on appeal. We disagree.

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is

---

[1] Appellant presented his claim of PCRA counsel's ineffectiveness at the first opportunity to do so. We will review this claim based on our Supreme Court's decision in *Commonwealth v. Bradley*, ___ Pa. ___, ___ 261 A.3d 381, 400 (2021) (holding "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal").

a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Commonwealth v. Chmiel***, 612 Pa. 333, 30 A.3d 1111 (2011).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

***Commonwealth v. King***, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting ***Sandusky, supra*** at 1043-44).

"[I]t is axiomatic that [trial] counsel will not be considered ineffective for failing to pursue meritless claims." ***Commonwealth v. Rivera***, 816 A.2d 282, 292 (Pa.Super. 2003), *appeal denied*, 573 Pa. 715, 828 A.2d 350 (2003) (quoting ***Commonwealth v. Pursell***, 555 Pa. 233, 724 A.2d 293, 304 (1999)). Consequently, "[p]ost-trial counsel will not be deemed ineffective for failing to raise and preserve meritless challenges to the effectiveness of trial counsel." ***Id.*** (quoting ***Commonwealth v. Thuy***, 623 A.2d 327, 335 (Pa.Super. 1993)).

Instantly, the PCRA court evaluated Appellant's claim of trial counsel's

ineffectiveness for not pursuing DNA testing. In its opinion denying PCRA relief, the court explained:

> [Trial counsel,] Attorney Valsamidis[,] did not believe it was prudent to test the Camel cigarette for DNA for fear it may contain [Appellant's] DNA. Moreover, Attorney Valsamidis wanted to leave the door open to attack the lack of DNA testing of the Camel cigarette butt as part of the overarching narrative [that] the investigation conducted in this case was done in a "sloppy" manner. The [c]ourt recognizes the risks and benefits of testing the DNA on the Camel cigarette butt. Attorney Valsamidis made a reasonable decision to forego seeking a DNA expert concerning the cigarette butt in lieu of continuing the narrative [that] the investigators did not conduct a thorough investigation despite this being a homicide case. Plus, [Appellant] testified he smoked a different brand of cigarettes which supported his rendition of events that someone else killed Decedent and left the cigarette butt. The [c]ourt will not second guess Attorney Valsamidis's trial strategy when his decisions had reasonable grounds contained within the record.

(PCRA Court Opinion, filed 4/22/22, at 23-24).

The record supports the PCRA court's analysis that trial counsel had a reasonable basis not to pursue DNA testing of the cigarette butt. **See Boyd, supra**. **See also Dennis, supra**. Trial counsel did not overlook the cigarette butt as evidence; rather, he incorporated it into the defense strategy. Although Appellant's current counsel insists that the strategy employed was wrong, we do not judge the reasonableness of trial counsel's approach in hindsight. **See King, supra**. As PCRA counsel cannot be deemed ineffective for failing to preserve a meritless claim, we conclude that Appellant is not entitled to relief on this layered claim of ineffectiveness. **See Rivera, supra**.

In his final two issues, Appellant argues the PCRA court erred when it

denied his motion for DNA testing,[2] which Appellant filed during the pendency of this appeal, on August 4, 2022. Because the order on appeal concerns the denial of PCRA relief and not a ruling on Appellant's August 4, 2022 motion, any claims concerning this motion are not properly before us at this time.[3] Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/3/2023

---

[2] We note that although a motion for DNA testing "falls under the aegis" of the PCRA, this Court has long differentiated between petitions for relief under section 9534 of the PCRA and motions for DNA testing under section 9543.1 of the PCRA. **Commonwealth v. Kunco**, 173 A.3d 817, 823 (Pa.Super. 2017). A motion for DNA testing under section 9543.1 is not a PCRA petition, "[r]ather, it allows for a convicted individual to first obtain DNA testing which could then be used within a PCRA petition." **Commonwealth v. Tyler**, 234 A.3d 750, 753 (Pa.Super. 2020) (citations and internal quotation marks omitted). "[A]lthough the legislature placed section 9543.1 within the larger statutory framework of the PCRA, the litigation of a motion for DNA testing is, in substance, a wholly separate proceeding from litigation of a PCRA petition." **Id.** (citations and internal quotation marks omitted).

[3] We note that, according to the docket entries, the PCRA court has not ruled on Appellant's August 4, 2022 motion. On August 12, 2022, Appellant filed a motion in this Court to remand for DNA testing, which this Court denied on August 29, 2022, without prejudice to Appellant's right to argue any properly preserved issues in his appellate brief. As the August 4, 2022 motion for DNA testing is not properly before us and is still pending before the PCRA court, we decline Appellant's request for remand.

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

               VS. : LAWRENCE COUNTY, PENNSYLVANIA

JOSEPH ANTHONY MARKIJOHN, II, : CRIMINAL DIVISION

         Defendant. : NO. 445 of 2015
                    :

## APPEARANCES

For The Commonwealth:          Jonathan R. Miller, Esq.
                                 Lawrence County District Attorney
                                 430 Court Street
                                 New Castle, PA 16101

For The Defendant:              Christopher P. Lacich, Esquire
                                 100 East Federal Street, Suite 600
                                 Youngstown, OH 44503

## OPINION

COX, J.                                              May 20, 2022

In the instant matter, the defendant Joseph Anthony Markijohn, II, filed a timely Notice of Appeal on April 28, 2022, concerning the Order of Court and Opinion filed on April 22, 2022, denying his Petition for Post-Conviction Relief ("PCRA"). On appeal, Defendant contends this Court erred in failing to find his trial counsel was ineffective for the following reasons:

I.    Failure to call character witnesses on behalf of Defendant;

II.   Failure to properly investigate alibi defense, file a notice of alibi defense and request the Court provide the jury with an alibi instruction;

III.  Counsel was ineffective when he conceded twice during his closing argument the Decedent's death occurred between 3:30 p.m. and 6:30 p.m.;

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

IV.   Failure to file a motion in limine or object at trial to the Commonwealth asking about and then showing Defendant's lip tattoo which read "KILL";

V.    Failure to file a motion in limine or object at trial to the Commonwealth presenting testimony concerning a post on Defendant's Twitter page which stated, "One day I'm finally going to be calm and I'll be surrounded by shell casings";

VI.   Failure to file a motion in limine or object at trial to testimony concerning a prior incident in which Defendant pulled a firearm on a houseguest who took umbrage at being prematurely awakened and started destroying his mother's bedroom;

VII.  Failure to hire an investigator to explore various issues crucial to preparing and presenting a defense at trial;

VIII. Failure to admit and publish to the jury a photograph taken by Decedent's girlfriend of Decedent's body and the voicemail Defendant left for Decedent when he arrived in Ashtabula, Ohio; and

IX.   Defendant's trial counsel testified at the proceedings for Defendant's PCRA Petition concerning a false narrative Defendant informed him the owners of the shed he and the victim robbed killed the victim and followed Defendant to Ashtabula, Ohio.

On December 28, 2014, Defendant and the decedent Joseph Pagley made plans, so Defendant and his girlfriend Kaitlyn Kerezsi intended to drive from Ashtabula, Ohio, to New Castle, Lawrence County, Pennsylvania. Defendant was going to obtain marijuana from Decedent and pay Decedent a lump sum of money for a previous debt. On that day, Defendant advised Ms. Kerezsi Decedent did not want her to accompany him even though she went with him in the past. Defendant left his residence at approximately 1:00 p.m. and took a change of clothes with him, which he informed Ms. Kerezsi he was taking them "just in case he got dirty".

Defendant arrived in New Castle and went to a residence occupied by Keith Roupp to meet with Decedent at approximately 3:00 p.m. Defendant testified at trial he and Decedent then perpetrated a theft from a marijuana grow operation. They transported

the stolen marijuana to Decedent's residence and brought it to the basement. Once that marijuana was stored, Decedent opened a safe and provided Defendant with five pounds of marijuana. According to Defendant, they then went upstairs and Defendant wrote a check in the amount of $8,200.00 as a promise to pay for the marijuana. That check was discovered by law enforcement resting on top of the opened safe when Decedent's body was discovered. Defendant explained he provided Decedent with a .25 caliber pistol for his protection because they just robbed a grow operation and Defendant left to return home to Ashtabula. Defendant testified he departed Decedent's residence at 4:00 p.m. and returned to his home in Ashtabula at approximately 5:30 or 6:00 p.m. When he arrived at his house, Defendant was wearing a different sweatshirt than he wore when he left according to Ms. Kerezsi and she did not see him bring back a change of clothes.

Decedent's girlfriend, Shayna Magno, resided with Decedent but did not have a key to enter as she was not allowed to be there alone due to her heroin addiction. On the morning of December 28, 2014, Decedent informed her he was meeting someone from out of town and she had to leave. As a result, Ms. Magno left Decedent's residence before 3:00 p.m. and she went to use heroin with an acquaintance. Decedent observed Ms. Magno with the acquaintance, and he became angry which caused an argument between the two of them via text messaging. They sent multiple texts to each other between 3:08 p.m. and 3:32 p.m. After that time, Ms. Magno attempted to send another text message to Decedent, but his phone was turned off. Later that day, Ms. Magno sent Decedent a text asking if she could come to his residence to hang out, but Decedent did not respond to her. Ms. Magno then called Decedent twice in quick succession with no answer. Ms. Magno called David Roupp at 6:30 p.m., who she would routinely contact when unable to

reach Decedent, but Mr. Roupp missed the call. Ms. Magno attempted to call Decedent at 6:31 p.m., 8:09 p.m., 8:13 p.m., 9:50 p.m. and twice in quick succession at 10:38 p.m. At 10:40 p.m., Ms. Magno spoke with Mr. Roupp, who indicated he had not spoken with Decedent since 2:00 p.m.

Ms. Magno decided to go to Decedent's residence to see if he was there. When she arrived she observed Decedent's vehicle in the driveway. She then entered the residence, which was unlocked. She walked around the house calling Decedent's name with no response. However, she did not enter the basement because it was pitch black. Ms. Magno went outside to smoke a cigarette and called Mr. Roupp to come to Decedent's residence. Upon his arrival, Mr. Roupp found Ms. Magno outside with Decedent's dog. He went inside to search for Decedent. Eventually, Mr. Roupp discovered Decedent in the basement and he instructed Ms. Magno to call 911, which she did at 11:26 p.m. Ms. Magno was screaming when speaking with the 911 operator, who asked to speak with someone else, so Mr. Roupp got on the phone. The operator instructed Mr. Roupp to check to see if the body was cold and it was. Ms. Magno then took a photograph of the body and they waited for police to arrive.

Investigator Harry S. Gustafson, Jr., of the Pennsylvania State Police collected surveillance video from Preston Motors, which was near Decedent's residence. An employee for Preston Motors indicated the timestamp on the video would show seven minutes later than it actually was. At 3:44 p.m., the Preston Motors surveillance video revealed Defendant's vehicle following Decedent's vehicle driving down Kenneth Avenue towards Decedent's residence. In addition, Decedent's cell phone records indicate his last incoming call received was from Keith Roupp at 3:09 p.m. and the last text message

sent from his phone was to Ms. Magno at 3:32 p.m. Decedent's phone also received and read 8 iMessages between 2:33 p.m. and 3:58 p.m.

Bullet fragments removed from Decedent's body were found to be .25 caliber and law enforcement discovered three .25 caliber casings in Decedent's basement. Prior to December 28, 2014, Defendant possessed a .25 caliber pistol as Ms. Kerezsi saw the firearm a week prior under his mattress at Defendant's residence in Ashtabula, Ohio. In the event anyone asked about the firearm, Defendant informed Ms. Kerezsi to say they never had a firearm and he stated he "threw it". Defendant did not explain to Ms. Kerezsi where he threw the firearm.

Defendant and Ms. Kerezsi then repackaged the marijuana and stored it. Defendant engaged in reselling and distributing the marijuana to five friends. Prior to December 28, 2014, Defendant did not sell large amounts of marijuana as the largest amount Ms. Kerezsi saw him possess was an ounce. Defendant testified he would be given up to two pounds at a time. Defendant sold the marijuana to Brian Westbrook and Zach McClung, who each testified they never saw Defendant with large quantities of marijuana to sell.

On December 30, 2014, Terrance Albright got into an argument with his girlfriend and went for a walk to cool down. He drove to Smolen Bridge in Ashtabula and began walking. He discovered a cell phone under a guardrail and he guessed the password of 0000 which was correct. It was Decedent's missing cell phone and Mr. Albright contacted Decedent's father to tell him he found the phone. Decedent's phone was discovered 3.5 miles from Defendant's residence and 85 miles from Decedent's residence.

A warrant was executed on Defendant's residence, which led to the discovery and seizure of several pounds of marijuana. Commonwealth's Exhibit 73 was admitted at trial which depicted some of the jars of marijuana which Ms. Kerezsi and Defendant packaged when he returned to Ashtabula. Some of the jars were labeled "Blue Dream" and "Fu Dawg". Commonwealth's Exhibit 59 was admitted during the testimony of Trooper Gustafson. It depicts the text messages received and sent by Decedent on December 28, 2014. The exhibit shows Decedent received a text at 2:31 p.m., prior to meeting with Defendant, which states: "Need to c u im ready for them 2 zippo of Blue dream". Decedent then agreed to meet the sender of this message. This was entirely before Defendant and Decedent met on December 28th. Commonwealth's Exhibit 57 also was admitted during the testimony of Trooper Gustafson. Among other things, it depicts an iMessage sent from Decedent's phone, asking the question "How's that fu dawg hitting?" Defendant admitted the marijuana at his residence was the same Decedent sold, although he said he purchased it rather than stole it.

On December 31, 2014, Defendant was interviewed by Trooper Gustafson and Trooper Chris Birckbichler at the Ashtabula County Sheriff's Office. Defendant acknowledged he met Decedent at Mr. Roupp's residence on December 28, 2014, and he received two ounces of marijuana from Decedent, which was untrue as he returned to Ashtabula with five pounds of marijuana. Defendant initially provided the Troopers with an inaccurate recitation of the route he used to return home from New Castle, but changed his story when confronted with the possibility the Troopers would check surveillance videos. Defendant also was untruthful when he informed them he did not possess a

firearm despite having been in possession of the .25 caliber pistol which he posted about on Instagram. Following that interview, Defendant was arrested.

On July 6, 2015, the Commonwealth filed an Information charging Defendant with Criminal Homicide[1], Robbery-Inflicts Serious Bodily Injury[2], Theft by Unlawful Taking or Disposition-Movable Property[3] and Receiving Stolen Property[4]. Defendant's trial commenced on October 22, 2018, and concluded on October 26, 2018, which resulted in a jury convicting Defendant on the charges of Murder of the First Degree and Robbery. On December 5, 2018, Defendant was sentenced to a term of incarceration for the remainder of his natural life for the charge of Murder of the First Degree and a term of incarceration of not less than six (6) years nor more than twenty (20) years for the charge of Robbery.

Defendant filed a Motion for Post-Sentence Relief on December 13, 2018, consisting of a Motion for New Trial and/or Judgment of Acquittal, Motion in Arrest of Judgment, Motion for Appointment of Counsel and a Motion to File Supplemental Authority and/or Additional Grounds for Relief. On the same date, the Court granted the request to file a Motion for Supplemental Authority and/or Additional Grounds for Relief and the appearance of Defendant's trial counsel, Steven Valsamidis, Esquire, was withdrawn. The Court also appointed Dennis W. McCurdy, Esquire, to represent Defendant. On May 10, 2019, the Court filed an Order of Court denying the remaining portions of Defendant's Motion for Post-Sentence Relief. An Opinion explaining the Court's rationale for denying Defendant's Motion was filed on May 24, 2019. Defendant

[1] 18 Pa.C.S.A. § 2501(a).
[2] 18 Pa.C.S.A. § 3701(a)(1)(i).
[3] 18 Pa.C.S.A. § 3921(a).
[4] 18 Pa.C.S.A. § 3925(a).

7

filed a timely Notice of Appeal to the Superior Court and a Concise Statement of Errors Complained of on Appeal on June 4, 2019. The Superior Court affirmed this Court's decision to deny Defendant's Motion for Post-Sentence Relief by Memorandum Opinion filed on January 22, 2020. Defendant filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which was denied on June 29, 2020.

Attorney McCurdy then filed a Motion to Withdraw Representation on July 9, 2020, which was granted on the same date. The Court appointed Christopher P. Lacich, Esquire, to represent Defendant for future proceedings. Defendant subsequently filed a Motion to Restore Direct Appeal Rights *Nunc Pro Tunc* on August 28, 2020, which was withdrawn by Order of Court filed on September 8, 2020. Defendant filed the current PCRA Petition on December 18, 2020, raising various claims of ineffective assistance of his trial and appellate counsel. Next, Defendant filed a Motion for Appointment of Investigator/Experts and Request for Status Conference on December 18, 2020, and the Court filed an Order on January 8, 2021, scheduling this matter for a Status Conference on February 1, 2021. The Motion for Appointment of Investigator/Experts was held in abeyance. Following that conference, a hearing was scheduled on Defendant's PCRA Petition for May 25, 2021.

On that date, Defendant presented the testimony of his trial counsel, Steven Valsamidis, Esquire, concerning numerous aspects of his representation of Defendant. Attorney Valsamidis recalled having conversations about retaining a private investigator. However, it was unlikely a private investigator would have been able to locate the grow shed robbed by Defendant and Decedent as Defendant could not recall the route they traveled to get to that location. Attorney Valsamidis believed that could be used by the

Commonwealth to damage Defendant's credibility if he hired a private investigator and they were unable to locate the shed. At the conclusion of that conversation with Defendant, Attorney Valsamidis asked Defendant if the private investigator would find the grow shed and if he wanted to hire a private investigator. Defendant remained silent and Attorney Valsamidis understood that to mean he did not wish to hire a private investigator at that time. Attorney Valsamidis also did not believe hiring a private investigator to investigate Ms. Magno would have been productive as the defense was based upon someone associated with the grow shed being the perpetrator and Ms. Magno was not involved with that operation. Although, Attorney Valsamidis acknowledged Ms. Magno was a person of interest in the homicide based upon the testimony of one of the Pennsylvania State Troopers.

Attorney Valsamidis also explained he did not feel it was necessary to file a notice of alibi defense as Defendant's version of events left the possibility he was in New Castle at the time of the homicide. Under those circumstances, Attorney Valsamidis did not believe an alibi defense or instruction to the jury was necessary.

Defendant's counsel inquired as to why Attorney Valsamidis did not file a motion in limine as it pertained to Defendant's lip tattoo of the word "Kill". It was his opinion that tattoo is easily explainable because Defendant was a Marine years earlier and he believed it demonstrated desperation on behalf of the Commonwealth to emphasize the tattoo. In relation to a prior incident in which another individual became upset at Defendant's mother's residence and began destroying her bedroom causing Defendant to brandish a .25 caliber pistol, Attorney Valsamidis did not file an objection as there was no basis to do so because the Commonwealth was introducing it for the legitimate

purpose of demonstrating Defendant possessed a firearm to impeach his prior statement to the Troopers denying possession of a firearm. At the time that was presented to the jury, the Commonwealth did not know whether Defendant was going to testify.

When questioned about calling character witnesses to testify on Defendant's behalf, Attorney Valsamidis indicated they attempted to locate witnesses. He had conversations with several of Defendant's friends from his time in the military about appearing at trial, but they had not been around Defendant for an extended period of time. Defendant identified several potential character witnesses and Attorney Valsamidis recalled having conversations with at least two of them. He then explained two of the witnesses he spoke with had not been in Defendant's company for a "significant period of time". In addition, Attorney Valsamidis recalled one of those individuals, Hunter Bernard, left a message for Attorney Valsamidis indicating he was unavailable for trial. Attorney Valsamidis did not subpoena Mr. Bernard based upon his belief subpoenaing a witness who is supposed to be favorable but is not cooperative often will not result in favorable testimony.

Another hearing was scheduled for September 9, 2021, to allow for further testimony to be presented. On that date, Defendant testified concerning his statement to Troopers Gustafson and Birckbichler on December 31, 2014. Defendant admitted he lied to them about possessing the firearm because he feared he would get into trouble for providing it to Decedent. Following the interview, Defendant was arrested and transported to Lawrence County, Pennsylvania. Initially, Defendant was represented by Lawrence J. Keith, Esquire, and Dennis A. Elisco, Esquire, of the Lawrence County Public Defender's Office; however, Defendant wanted a change of counsel due to not receiving

responses to his inquiries. The Court then appointed John J. Bongivengo, Esquire, to represent Defendant, who Defendant never actually met because he privately retained Attorney Valsamidis. They thoroughly discussed the events of December 28, 2014, which included Defendant's reasoning for providing the firearm to Decedent. Defendant indicated he lied about it to the Troopers as Decedent had a felony conviction and it is illegal to provide a firearm to a convicted felon. Defendant also indicated Attorney Valsamidis was aware of his description concerning the location of the shed he and Decedent broke into and from which they stole marijuana.

According to Defendant, he and Attorney Valsamidis never discussed hiring a private investigator or about cell phone technology. Conversely, they spoke about potential character witnesses and, according to Defendant, he provided Attorney Valsamidis with the names Hunter Bernard, Coralyn Thompson and Edward Crawford, II. Defendant stated those individuals were willing to testify on his behalf as character witnesses.

Another hearing was held on November 1, 2021, to permit Defendant to present the testimony of two of his proposed character witnesses, Edward Crawford, II, and Coralyn Thompson. Mr. Crawford testified he has never been convicted of a felony or any crime of dishonesty. He is familiar with Defendant as they previously worked together at Ringer Screen Print in approximately 2013. Their families were friends and Defendant used to "hang out" at his house when they were younger. Mr. Crawford and Defendant would often socialize after work until Defendant was arrested for Decedent's homicide. Eventually, Defendant's mother, Anna Dixon, contacted Mr. Crawford to ask him to testify on Defendant's behalf as a character witness, but he did not recall receiving a telephone

call from Attorney Valsamidis. Mr. Crawford testified he was ready, willing and able to testify to Defendant's good character at trial. However, Mr. Crawford was never subpoenaed by Attorney Valsamidis to appear at trial. On cross-examination, Mr. Crawford stated he probably would not have traveled here to testify at trial as "this is all nervous to me, I guess, you know, nerve wracking..." He also explained he would have been upset if he were compelled to testify at trial. Mr. Crawford indicated he was in Defendant's presence when he used and sold marijuana.

Ms. Thompson also testified at that hearing and explained she has been a friend of Defendant since Defendant was in the first grade. The last time she saw Defendant was in 2013 at her brother's funeral, but they kept in touch through regular communications via the telephone. They lost touch briefly then Defendant began contacting her by telephone during his incarceration. As trial was approaching, Defendant and Ms. Dixon asked Ms. Thompson if she would be willing to be a character witness for Defendant. Attorney Valsamidis did not contact Ms. Thompson concerning her willingness to testify at trial. Ms. Thompson indicated she has not been convicted of any felonies or crimes of dishonesty. She stated she was ready, willing and able to testify on Defendant's behalf as a character witness. On cross-examination, Ms. Thompson testified she did not appear at trial because she was not compelled to do so but would have attended if she received a subpoena. She also indicated she knew Defendant was a marijuana user but did not know he dealt marijuana.

The Court is required to examine Defendant's various claims pertaining to his trial counsel's ineffectiveness.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

To establish a claim for ineffective assistance of counsel, a defendant must prove each of the following: "1) an underlying claim of arguable merit; 2) no reasonable basis for counsel's act or omission; and 3) prejudice as a result, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." Commonwealth v. Cooper, 941 A.2d 655, 664 (Pa. 2007) (citing Commonwealth v. Carpenter, 555 Pa. 434, 725 A.2d 154, 161 (1999)). Counsel is presumed to be effective and the burden is on the defendant to prove otherwise. Commonwealth v. Jones, 942 A.2d 903, 906 (Pa. Super. 2008) (citing Commonwealth v. Pond, 846 A.2d 699 (Pa. Super. 2004)). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." Commonwealth v. Sneed, 587 Pa. 318, 899 A.2d 1067 (2006) (citing Commonwealth v. (Michael) Pierce, 567 Pa. 186, 786 A.2d 203, 221-223 (2001); Commonwealth v. Albrecht, 554 Pa. 31, 720 A.2d 693, 701 (1998)).

Counsel is effective if the Court can determine that the course of action has some reasonable basis designed to effectuate the client's interest. Commonwealth v. Sisco, 482 Pa. 459, 462, 393 A.2d 1197, 1199 (1978). The test for ineffective assistance of counsel sets forth that the defendant must prove each of the following: (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. Commonwealth v. Bolden, 512 Pa. 468, 517 A.2d 935 (1986) (quoting Strickland, supra.). The prejudice requires the defendant show that, but for his counsel's ineffectiveness, the result would have been different. Commonwealth v. Pierce, 515 Pa. 153, 161, 527 A.2d 973, 976 (1987). It must be noted that there is a presumption that counsel was effective. Id., 515 Pa. at 159, 527 A.2d at 975.

First, Defendant asserted his trial counsel was ineffective for failing to call character witnesses to testify at trial.

Trial counsel's failure to call character witnesses may constitute ineffective assistance of counsel. Commonwealth v. Hull, 982 A.2d 1020, 1023 (Pa. Super. 2009) (citing Commonwealth v. Harris, 785 A.2d 998 (Pa. Super. 2001)). First, the defendant must prove: "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to have denied him a fair trial." Commonwealth v. McLaurin, 45 A.3d 1131, 1137 (Pa. Super. 2012) (quoting Commonwealth v. Walls, 993 A.2d 289, 302 (Pa. Super. 2010)). At an evidentiary hearing for the defendant's claim of ineffectiveness, he or she must provide evidence, such as an affidavit, that the alleged witness was available to testify and is willing to cooperate with the defense. Id. (quoting Commonwealth v. Khalil, 806 A.2d 415, 422 (Pa. Super. 2002)). If the defendant is able to demonstrate the witness is willing to testify, the Court must apply a reasonable basis test to determine if counsel's chosen course was designed to effectuate the client's interests. Id. "If [the Court] conclude[s] that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." Commonwealth v. Weiss, 530 Pa. 1, 5-6, 606 A.2d 439, 441-442 (1992) (citing Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 235 A.2d 349 (1967)). "If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice." Weiss, 530 Pa. at 6, 606 A.2d at 442 (citing Pierce, 527 A.2d 973). It is

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

14

important to note that the defendant bears the burden of demonstrating his trial counsel was ineffective as there is a presumption that counsel was effective. Id. (citing Commonwealth v. McNeil, 506 Pa. 607, 487 A.2d 802 (1985)).

In the current case, Attorney Valsamidis testified Defendant provided him with two individuals who were potential character witnesses, which included Mr. Bernard. He attempted to contact those witnesses about their willingness to testify on Defendant's behalf at trial but was unable to speak with them. Moreover, Mr. Bernard left a message stating he was unwilling to voluntarily testify on Defendant's behalf. In Attorney Valsamidis's professional opinion, it would have been potentially detrimental to compel a character witness to testify at trial.

Defendant presented the testimony of two prospective character witnesses he wanted to testify at trial, Mr. Crawford and Ms. Thompson. While Mr. Crawford was willing to attest to Defendant's good character and peaceful nature, he expressed a reluctance to testify at trial as he considered it "nerve wracking". In addition, he stated Defendant was a marijuana user and dealer, who performed both of those acts in Mr. Crawford's presence. Mr. Crawford was never asked about Defendant's reputation in the local community in regards to his character.

As it relates to Ms. Thompson, she expressed her complete willingness to testify on Defendant's behalf as a character witness without hesitation stating, "He's a great human being". Despite having been self-described lifelong friends with Defendant, she has not spent significant time in the company of the Defendant prior to his incarceration nor has she spent much time in the local community in Ashtabula, Ohio. Ms. Thompson graduated high school in 2004 and moved to Indiana for college. She returned to the

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

Ashtabula, Ohio, area briefly in 2007 before moving to her current location of Colorado Springs, Colorado, in 2008. She had not been in Defendant's presence since seeing him at her brother's funeral in 2013. They did not communicate frequently thereafter until Defendant was arrested on the current charges and he began contacting her by telephone. It would be difficult for Ms. Thompson to testify convincingly about his character or reputation as she has not spent much time around him and there were long periods of time they did not regularly communicate with each other.

Based upon the testimony of record, there is no indication Attorney Valsamidis was aware of Ms. Thompson's willingness to testify at trial and the only witness he clearly was aware of, Mr. Bernard, did not show an interest in testifying on Defendant's behalf. Moreover, Mr. Crawford displayed a distinct hesitancy to testify at trial as stated in his testimony concerning Defendant's PCRA Petition. Attorney Valsamidis exercised his professional judgment as a seasoned criminal defense attorney to advise Defendant presenting character witnesses at trial would not be in his best interest.

Additionally, there is nothing of record to indicate the testimony of Mr. Crawford or Ms. Thompson would have remedied many of the issues Defendant faced at trial, such as the false statement to the Troopers about being in possession of a firearm. In fact, Defendant admitted in his testimony he lied to the Troopers about the firearm as he feared legal repercussions for providing a firearm to a convicted felon. Similarly, Defendant admitted he was a marijuana user and regularly sold marijuana. Furthermore, there is nothing the aforementioned witnesses could have told the jury to alleviate the harm caused by testimony relating to Defendant's less than honorable discharge from the Marines, the incident at his mother's residence involving threatening another person with

the .25 caliber pistol or the tattoo on his lip of the word "Kill". As such, Defendant failed to demonstrate he was prejudiced by Attorney Valsamidis's failure to call character witnesses on his behalf at trial.

Next, Defendant contended his trial counsel was ineffective for failing to properly investigate an alibi defense, file a notice of alibi defense and request the Court provide the jury with an alibi instruction.

An unexplained failure to request an alibi jury instruction after presenting alibi evidence demonstrates ineffective assistance of counsel. Commonwealth v. Nauman, 498 A.2d 913, 916 (Pa. Super. 1985). An alibi defense "places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." Commonwealth v. Dennis, 17 A.3d 297, 302 (Pa. 2011). "All that is required is that, due to separation, it is impossible for the defendant to have committed the crime." Id. If a defendant resorts to an alibi defense, the evidence must show it was impossible for the defendant to be present at the commission of the crime. Commonwealth v. Saldutte, 7 A.2d 121, 123 (Pa. Super. 1939). "An alibi which leaves it possible for the accused to be guilty, is no alibi at all." Commonwealth v. Larue, 44 A.2d 535, 536 (Pa. Super. 1945). In order to create an alibi defense there must be consistency between the date and time of the crime and that of defendant's alibi. Commonwealth v. Ali, 10 A.3d 282, 316 (Pa. 2010) (The Court denied the appellant's claim of ineffective assistance of counsel for failing to present alleged alibi witness's statement as it was inadmissible hearsay and did not support an alibi because it failed to account for the appellant's whereabouts during all times at which the murder could have occurred).

In the current case, Attorney Valsamidis testified he did not file a notice of alibi defense and did not request an alibi instruction for the jury because Defendant's testimony indicated he was with Decedent on the day of the homicide and was in the basement of Defendant's residence. Defendant, by his own admission, left Decedent's residence at approximately 4:00 p.m. and returned to Ashtabula around 5:30 or 6:00 p.m. The timeframe set forth by Defendant's testimony does not render it impossible for him to have been present when Decedent was killed. His testimony does not constitute an alibi defense and an alibi defense instruction would not have been appropriate at trial. Hence, Attorney Valsamidis was not ineffective for failing to file a notice of alibi defense and for failing to request an alibi jury instruction.

Defendant also asserted his trial counsel was ineffective when he conceded twice during his closing argument the Decedent's death occurred between 3:30 p.m. and 6:30 p.m. Attorney Valsamidis believed that statement was helpful in establishing the defense presented at trial as Defendant indicated the perpetrators followed him toward Ashtabula where they disposed of Decedent's cell phone. This would be consistent with those individuals having committed the homicide prior to following Defendant, which is in accordance with the timeframe referenced by Attorney Valsamidis. Thus, Attorney Valsamidis had a reasonable basis for making those statements in closing argument and he was not ineffective for doing the same. Moreover, Defendant failed to demonstrate he was prejudiced by his trial counsel's statement and how omitting that statement would have resulted in an acquittal.

Next, Defendant contended trial counsel was ineffective for failing to file a motion in limine or object at trial to the Commonwealth asking about and then showing

Defendant's lip tattoo which read "KILL", testimony concerning a post on Defendant's Twitter page which stated, "One day I'm finally going to be calm and I'll be surrounded by shell casings" and evidence of a prior incident at Defendant's mother's house in which Defendant brandished the .25 caliber pistol due to another individual destroying a bedroom.

Evidence of crimes or other acts are inadmissible to prove a person's character in order to show the person acted in accordance with that character trait. Pa.R.E. 404(b)(1). However, that evidence is admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. Pa.R.E. 404(b)(2). The aforementioned list is not exclusive as it relates to legitimate purposes for admitting evidence of crimes or other acts. Commonwealth v. Brown, 52 A.3d 320, 325 (Pa. Super. 2012). The Pennsylvania Courts also have recognized that evidence may be used when there is a logical connection between the crimes that proof of one will naturally tend to show the accused committed the other. Id., 52 A.3d at 326. Similarly, that type of evidence may be admitted to impeach a defendant's credibility as the defendant is not insulated from being discredited merely because the proof involves other crimes or bad acts. Commonwealth v. Hood, 872 A.2d 175, 185 (Pa. Super. 2005); Commonwealth v. Nypaver, 69 A.3d 708, 716-717 (Pa. Super. 2013).

The Commonwealth questioned Defendant concerning his Twitter post containing the quote "One day I'm finally going to be calm and I'll be surrounded by shell casings" and referred to the "Kill" tattoo on his lip to impeach his testimony in which he referred to himself as a "hippie" who collects vinyl and smokes weed. He also indicated he is a peaceful and loving person. While that evidence would not ordinarily be admissible to

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

19

demonstrate he had a propensity for violence, it was available to impeach his testimony when he declared he had a peaceful nature in the form of characterizing himself as a "hippie". It must be noted Attorney Valsamidis requested a sidebar prior to the admission of that evidence to obtain an offer of proof. The Commonwealth explained it was being used for impeachment purposes. As a result of the Commonwealth presenting this evidence for the legitimate purpose of impeaching Defendant's testimony relating to his peaceful nature, Attorney Valsamidis acted reasonably in failing to object as that evidence was admissible.

Attorney Valsamidis also acted reasonably in failing to object to evidence pertaining to the incident in which an individual was destroying Defendant's mother's bedroom and Defendant brandished a .25 caliber pistol to deter that behavior. At the time it was presented, the Commonwealth did not know whether Defendant was going to testify at trial and it was required to demonstrate Defendant possessed a firearm, especially in light of his statement to the Troopers denying possession of a firearm. Again, the Commonwealth used this evidence to impeach the credibility of the statement provided by Defendant and his possession of the firearm was relevant to his ability to commit the crime at issue. The Court provided an instruction to the jury stating that evidence was admitted for a limited purpose tending to show motive, opportunity, intent, preparation, plan, knowledge, identity and absence of mistake or accident. The Court clearly informed the jury that evidence was not to be interpreted as showing Defendant is a person of bad character or has criminal tendencies from which they would be inclined to infer guilt. Hence, Attorney Valsamidis was not ineffective for failing to object to that evidence.

Defendant argued his trial counsel was ineffective for failure to hire an investigator to explore various issues crucial to preparing and presenting a defense at trial. However, trial counsel is under no duty to hire an investigator where the defendant fails to demonstrate the investigator would have affected the outcome of the trial, which renders this claim without merit. *See* Commonwealth v. Murray, 488 A.2d 45, 47 (Pa. Super. 1985).

In the current matter, Defendant contends a private investigator could have been useful in locating the grow shed where Defendant and Decedent removed the marijuana prior to Decedent's death. However, Defendant was unable to provide an adequate explanation of the location of the grow shed to Attorney Valsamidis causing him concern as to whether the shed would be located by an investigator. It also raised concerns the Commonwealth would become aware Defendant could not recall the location of the grow shed, which would be utilized to call into question his version of events from that day. Defendant believes a private investigator could have located associates of Ms. Magno along with her criminal history. Unfortunately, Defendant failed to demonstrate how that information would have been helpful in presenting a defense at trial. Moreover, an investigation into Ms. Magno and her associates did not correlate with Defendant's version of events which point to the individuals in the vehicle who followed him to Ashtabula being the perpetrators. Thus, Defendant's claim for ineffective assistance of counsel concerning the failure to retain a private investigator was denied.

Next, Defendant argued his trial counsel was ineffective for failing to admit and publish to the jury a photograph taken by Decedent's girlfriend of Decedent's body and the voicemail Defendant left for Decedent when he arrived in Ashtabula, Ohio.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

21

Upon questioning by Defendant's counsel, Attorney Valsamidis was unable to recall whether the photograph of Decedent's body was admitted into evidence and published to the jury at Defendant's trial. There is nothing to indicate the omission of that photograph prejudiced Defendant in any way. Ms. Magno taking a picture of Decedent's body does not make Defendant's guilt more or less likely. The jury was well aware Ms. Magno went to Decedent's residence after not receiving a response to her text messages and telephone calls and she went inside of the residence because the door was unlocked. The jury also heard testimony Ms. Magno called Mr. Roupp, who arrived at the residence shortly thereafter and discovered Decedent's body in the basement. In addition, Ms. Magno placed the phone call reporting Decedent's death. It in no way exonerates Defendant merely because Ms. Magno took a photograph of Decedent's body with her cell phone. In fact, the jury was aware of Ms. Magno's strange behavior as she admitted to taking the photograph during her testimony at trial. Hence, Defendant has not established he was prejudiced in any manner due to trial counsel's failure to admit and publish the photograph of Decedent's body taken by Ms. Magno.

Attorney Valsamidis acknowledged he did not play the voicemail message Defendant left on Decedent's cell phone as he was not even sure he had a recording of it. However, Attorney Valsamidis felt the voicemail having not been played for the jury furthered a portion of the defense based upon the "sloppiness" of the Commonwealth's investigation demonstrating investigators "not having crossed all their T's and dotted their I's". Attorney Valsamidis explained the records he received concerning Defendant's cell phone correlated with Defendant's testimony regarding calls he made

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

to Decedent and their duration. It was a reasonable strategy for Attorney Valsamidis to forego seeking the voicemail recording as its absence pointed to a lack of thoroughness to the investigation while Defendant's phone records support Defendant's testimony relating to the calls he made to Decedent. Additionally, the audio on the voicemail could have been interpreted by the jury as being self-serving and the jury merely being aware the call was made was sufficient for assisting to establish the defense presented at trial. There is nothing in the record to indicate playing a recording of the voicemail from Defendant to Decedent would have made a significant impact on the decision rendered by the jury as they were aware Defendant placed the call to Decedent. Hence, Attorney Valsamidis was not ineffective for failing to play the voicemail from Defendant to Decedent.

Defendant claims Attorney Valsamidis testified at the proceedings for Defendant's PCRA Petition concerning a false narrative that Defendant informed him the owners of the shed he and the victim robbed killed the victim and followed Defendant to Ashtabula, Ohio. The Court finds Attorney Valsamidis's testimony as it relates to his discussions with Defendant pertaining to the vehicle following Defendant to Ashtabula to be credible based upon the testimony and evidence of record. The defense presented at trial was predicated upon the involvement of the owners of the shed and the victim's death was an act of retribution for Defendant and the victim robbing the shed. Defendant was well aware of that defense at trial and he perpetuated the same through his testimony in which he explained he provided the victim with the .25 caliber pistol to be used as protection from the owners of the shed. In his Final Memorandum in Support of PCRA, Defendant contends Attorney Valsamidis was ineffective for failing to hire an investigator to make

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

further inquiries into the owners of the shed as it was the defense's theory at trial those were the individuals who killed the victim with the .25 caliber pistol Defendant provided to the victim. It was not until after the Court denied Defendant's PCRA Petition and he filed his Concise Statement of Errors did Defendant claim Attorney Valsamidis raised a false narrative about the owners of the shed occupying the vehicle which followed him to Ashtabula, Ohio. Hence, the Court cannot find any basis to grant the relief requested by Defendant based upon his assertion Attorney Valsamidis fabricated the narrative concerning the owners of the shed following him to Ashtabula.

Based upon the foregoing, Defendant Appeal should be denied in its entirety.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

24